**CHICAGO, B. & Q. R. CO. et al. v. CHICAGO GREAT WESTERN R. CO.**

No. 14395.

United States Court of Appeals
Eighth Circuit.

Aug. 6, 1951.

A. C. Erdall, Minneapolis, Minn. (J. C. James, James I. Shields, and Nye F. Morehouse, all of Chicago, Ill., Warren Newcome, Edwin C. Matthias and Hallan Huffman, all of St. Paul, Minn., C. W. Wright, Richard Musenbrock and James L. Hetland, all of Minneapolis, Minn., William J. Quinn, M. L. Countryman, Jr. and Conrad Olson, all of St. Paul, Minn., M. L. Bluhm, Chicago, Ill., and S. W. Rider, Jr., Minneapolis, Minn., on the brief), for appellants.

Wright W. Brooks, Minneapolis, Minn. (Guy A. Gladson, Bryce L. Hamilton, Chicago, Ill., Paul J. McGough, Minneapolis, Minn., Winston, Strawn, Shaw & Black, Chicago, Ill., and Faegre & Benson, Minneapolis, Minn., on the brief), for appellee.

Before GARDNER, Chief Judge, and SANBORN and THOMAS, Circuit Judges.

PER CURIAM.

This appeal is from an order denying in its entirety appellants' motion for a temporary injunction enjoining appellee, pending determination of this action on its merits, from taking any further action in furtherance of the abandonment, destruction or dismantling of the so-called Terminal Bridge in its line of railroad be-

tween South St. Paul, Minnesota, and its Hoffman Avenue Yard, in St. Paul, Minnesota, or the abandonment or destruction of any other portion of its said line of railroad. The parties will be referred to as they were designated in the trial court.

This was a suit in equity brought by plaintiffs, which are common carriers, seeking permanently to enjoin defendant, which is also a common carrier, from the further dismantling of defendant's Terminal Bridge or the abandonment of its line of railroad and requiring it to repair, reconstruct and place in operation said Terminal Bridge and its line of railroad and to resume switching and transportation service between South St. Paul and its Hoffman Avenue Yard by way of the Terminal Bridge, providing the neutrality of handling traffic, promptness and frequency of service as performed by defendant prior to April 20, 1951, in accordance with order of the Interstate Commerce Commission, and in accordance with its switching tariff. The motion was presented to the trial court upon the verified conplaint of the plaintiffs and upon affidavits in support thereof and also upon affidavits in opposition thereto.

Defendant has for many years owned and controlled the railroad terminal properties, including the so-called Terminal Bridge across the Mississippi River, extending between South St. Paul, Minnesota, and the Hoffman Avenue Yard in St. Paul, Minnesota. Under authority of the Interstate Commerce Commission approval of defendant's acquisition and control was made upon certain specific conditions. By these conditions it was required to preserve "the present neutrality of handling traffic inbound and outbound with equality of service to other railroad lines and without discrimination against such other railroads as to schedules, promptness or frequency of service." Since defendant acquired said line of railway it has continued to interchange traffic with plaintiffs at the Hoffman Avenue Yard. Said terminal facilities have been used and operated for the express purpose of providing switching service necessary for the handling of a large volume of carload shipments of livestock inbound to South St. Paul and packing

house products outbound therefrom so that stockyards and packing houses located at South St. Paul and the public generally would have the benefit of being served by all the competing line haul carriers operating into the Twin Cities. This line of railroad includes a swing span bridge across the Mississippi River. At the west end the Terminal Bridge has a 40 foot deck plate girder span; it has a 400 foot riveted swing span resting in the center on a center pier, with a clear opening for the spans respectively of 180 feet in both the left and right channels of the river. To the east of the swing span in the bridge there is a 190 foot truss span. The total length of the bridge is 1270 feet.

In April, 1951, during flood conditions the bridge became inoperative and defendant on or about May 1, 1951, began to dismantle the west arm of the swing span by cutting the stringers by means of an acetylene torch. Defendant did not secure from the Interstate Commerce Commission a certificate that the present and future public convenience and necessity permitted abandoning the terminal bridge or railway.

Defendant in resisting the motion for a temporary injunction claimed through affidavits that the action of the flood waters during the April, 1951 flood compelled it to remove the swing span of the bridge and to remove the center pier formerly supporting the swing span. Plaintiffs' affidavits directly controverted the necessity for such removal, plaintiffs claiming that defendant had abandoned its terminal bridge and its line of railroad between South St. Paul and its Hoffman Avenue Yard. There were affidavits on behalf of plaintiffs tending to show that defendant did not intend to reconstruct the bridge and restore the operation of the line of railroad. There was a conflict of expert opinion as to the advisability or practicability of repairing and restoring the bridge and a conflict as to the relative cost of such repairs and new construction thereof.

The trial court in connection with denial of the motion for temporary injunction made findings that the flood caused scour damage to the bed of the river next to the center pier, which required the removal of

the west and east arms of the swing span, the center pivot pier and the protective piers extending upstream; that the east arm and the pivot pier constituted a danger to navigation; that "It does not appear at this time that there is reasonable basis for assuming that defendant will without authorization from the Interstate Commerce Commission dismantle, destroy or abandon any other part of the said bridge or any portion of the line between South St. Paul and its Hoffman Avenue Yard unless restrained from so doing by this court," and "That there is not sufficient evidence to justify the court in assuming that the defendant will in the future, pending the final hearing on this action, attempt the removal, abandonment or destruction of any portion of the said bridge, other than the swing span and the center pier, or any portion of its line of road between South St. Paul and the Hoffman Avenue Yard, and therefore a temporary injunction ought not at this time be entered, but that in the event such action is attempted by defendant prior to final hearing of this cause, this court will, upon proper showing, restrain the same ex parte."

Before this appeal was perfected both swing spans of the bridge were removed, which eliminated the entire weight of any part of the bridge from the pivot pier.

On motion of plaintiffs we granted a stay and temporary injunction pending disposition of the appeal but advanced the cause for an early hearing. The case was not submitted on its merits but only on motion for a preliminary injunction. It was heard wholly on the verified complaint, affidavits and exhibits. On material questions the affidavits were conflicting but because of our views as to the applicable law we do not deem it important to attempt a statement of the evidence and the various claims of the parties in detail. Suffice it to say that there was no doubt that the plaintiffs had a substantial interest in the continued maintenance of the terminal line and bridge and that its abandonment would result in irreparable loss to them.

In the instant case the primary purpose of a temporary injunction was not to determine any controverted right but to prevent a threatened wrong and to preserve the status quo until final hearing on the merits. Usually a temporary injunction should be granted where the questions presented are grave and injury to the moving party will be certain and irreparable if it is denied and the final determination is in his favor, while if it is granted and the decision is unfavorable the inconvenience and loss to the opposing party will be inconsiderable or may be protected by bond and this is particularly true where the threatened act will injure or destroy the status quo of the controversy before a full hearing on the merits of the case can be had. Pratt v. Stout, 8 Cir., 85 F.2d 172; Benson Hotel Corp. v. Woods, 8 Cir., 168 F.2d 694; Ohio Oil Co. v. Conway, 279 U.S. 813, 49 S.Ct. 256, 73 L.Ed. 972. In Ohio Oil Co. v. Conway, supra, the Supreme Court in reversing an order denying a temporary injunction, among other things said:

"The application for an interlocutory injunction was submitted on ex parte affidavits, which are harmonious in some particulars and contradictory in others. The affidavits, especially those for the defendant, are open to the criticism that on some points mere conclusions are given, instead of primary facts. But enough appears to make it plain that there is a real dispute over material questions of fact, which cannot be satisfactorily resolved upon the present affidavits, and yet must be resolved before the constitutional validity of the amendatory statute can be determined. * * *

"Where the questions presented by an application for an interlocutory injunction are grave, and the injury to the moving party will be certain and irreparable, if the application be denied and the final decree be in his favor, while if the injunction be granted the injury to the opposing party, even if the final decree be in his favor, will be inconsiderable, or may be adequately indemnified by a bond, the injunction usually will be granted."

The application for preliminary injunction did not warrant a determination of the issues of fact and law involved on the merits of the case. It raised the question

whether or not there were substantial ques-tions of fact and law for determination and whether they were of such a substantial character as to require the preservation of the status quo until those questions could be determined. Cone v. Rorick, 5 Cir., 112 F.2d 894. As said by the Supreme Court in Mayo v. Lakeland Highlands Canning Co., 309 U.S. 310, 60 S.Ct. 517, 520, 84 L.Ed. 774: "The question before it (the trial court) was not whether the act was con-stitutional or unconstitutional; was not whether the Commission had complied with the requirements of the act, if valid, but was whether the showing made raised seri-ous questions, under the federal Constitu-tion and the state law, and disclosed that enforcement of the act, pending final hear-ing, would inflict irreparable damages up-on the complainants."

■ If the defendant does not intend to abandon this bridge and railroad then a temporary injunction could not seriously damage it, but if, on the other hand, it does intend such abandonment then the tempo-rary injunction ought to issue so that the rights of the parties may be determined at a hearing on the merits. At the time of the original hearing apparently at least a part of the weight of the swing span of this bridge was still resting on the pivot pier and the court properly denied the prelimi-nary injunction to the extent that it would have prevented defendant from removing the weight of the swing span from the pivot pier because that condition presented im-minent danger to navigation. This, how-ever, has been removed and, indeed, the top part of the pivot pier has been removed. With this entire weight off this pivot pier there is, we think, no substantial evidence that it is a menace to navigation and we are of the view that the order appealed from should be so modified as to restrain the de-fendant from further destroying this pivot pier or dismantling the balance of the bridge or line of railway.

The cause is therefore remanded with directions to the trial court to modify the order in accordance with the views ex-pressed in this opinion.