**UNITED STATES v. LADD.**

**THE MOHICAN.**

**THE ELOISE.**

No. 6355.

United States Court of Appeals
Fourth Circuit.

Argued Jan. 7, 1952.

Decided Feb. 5, 1952.

William T. Foley, Jr., Attorney, Department of Justice, Washington, D. C., (Holmes Baldridge, Asst. Atty. Gen., A. Carter Whitehead, U. S. Atty., Richmond, Va., William B. Eley, Asst. U. S. Atty., Norfolk, Va., and J. Frank Staley, Special Asst. to the Atty. Gen., on brief), for appellant.

Hugh S. Meredith, Norfolk, Va (Vandeventer, Black & Meredith, Norfolk, Va., on brief), for appellee.

Before PARKER, SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

This libel in admiralty was instituted in the United States District Court for the Eastern District of Virginia under the Public Vessels Act, 46 U.S.C.A. § 781 et seq., by one Ladd (hereinafter called libellant) to recover from the United States (hereinafter called appellant) damages sustained by his sloop Eloise, due to the alleged negligent manoeuvering of the coast guard cutter Mohican.

On Sunday, July 23, 1950, the sloop Eloise, owned by the libellant, was sailing on a shakedown cruise in Norfolk Harbor. The Eloise is a large Marconi rigged sloop, 54 feet in length, with a beam of 18.8 feet, 20 net tons in weight and carrying a mast

70 feet in height and approximately 14 inches in diameter at the point where it passed through the deck of the vessel. She was built in 1911. The sail area of the vessel, including a mainsail and jib, was approximately 2,300 square feet. The Eloise did not have an auxiliary motor.

Libellant had purchased the Eloise in October, 1949, for use as a pleasure craft but prior to that time the sloop had been engaged for many years in dredging oysters in North Carolina waters.

Around 12:30 p. m., while proceeding down the Elizabeth River, the Eloise was becalmed in the lee of the Norfolk and Western Railroad Piers. In this position, the sloop was pointing downstream on the starboard side of the channel at a 45° angle to the line of the channel.

While the sloop was thus becalmed, libellants and others aboard her observed the Mohican rounding Lambert's Point heading upstream. Fearing that the wake from the Mohican might swamp the Eloise, they attempted to warn the cutter of the plight of the sloop by waving from the bowsprit, ringing a bell and blowing upon a fog horn. Evidently these warnings passed unobserved or unheeded, for the Mohican neither slackened her speed nor altered her course.

The swells created by the Mohican caught the becalmed Eloise broadside, and as a result of the impact of the swells, the mast of the Eloise snapped with resulting damage to her sails and the deck railing.

At the trial, there was a great deal of dispute as to the speed of the Mohican and her distance from the Eloise at the time she passed. Witnesses from the Mohican testified she was proceeding at a speed of 8.5 knots or 165 r. p. m., and that the distance between the vessels when the Mohican passed was 175 yards. On the other hand, witnesses from the Eloise maintained that the speed of the Mohican was 12 knots or 235 r. p. m., and the distance between the sloop and the cutter was only 50 to 55 yards. There is also a great deal of dispute as to the condition of the mast on the Eloise.

Upon these facts, the District Court determined that the Eloise was seaworthy and that the reason her mast snapped was the excessive speed of the Mohican in view of the "obvious plight" of the sloop. From this decision, awarding damages to libellant in the sum of $2,000, appellant has appealed to us.

■ Appellant first contends that the District Court erred by its failure to make specific findings of fact and separate conclusions of law as required under Rule 46½ of the Admiralty Rules of the Supreme Court of the United States, 28 U.S. C.A. More specifically, appellant complains of the lack of definite findings of fact as to the speed of the Mohican and the distance between the two vessels at the time the Mohican passed the Eloise. With appellant's contentions we cannot agree. A careful examination of the memorandum opinion of the District Court reveals the essential facts upon which its conclusion is based. If the violation of Rule 46½ be error, it is harmless error.

We next turn to appellant's contention that the District Court erred in finding the Mohican guilty of negligence. There is no merit in this contention. The District Court, in its opinion, had this to say:

"At the request of the United States, the Court with counsel boarded the cutter (Mohican) on the day of the trial and watched her wake at the very point in question and under the speed contended for by each party. Observation from the shore was also made of her wake. It is agreed that at 165 r. p. m. the swell in the wake was unappreciable. At 235 or 240—the maximum of her engines—the swell was sizeable, not 5 feet but certainly 3 or 4.

"The conclusion of the Court is that whatever the speed of the Mohican, it was too fast against the obvious plight of the Eloise and the cutter's proximity." 97 F. Supp. at page 82.

■■ It is well settled that we are not free to reverse the findings of fact of a lower court unless these findings be shown to be clearly erroneous. In view of the finding of the District Judge based upon his

own observation that at 165 r. p. m., or 8.5 knots, the swell from the Mohican was negligible but at 12 knots, the speed at which libellant contends the Mohican was proceeding, the swell was from 3 to 4 feet, we cannot reverse the finding. It is evident that the District Judge concluded the swell created by the Mohican at 235 to 240 r. p. m., or a speed of 12 knots, was excessive and that the Mohican passed too close to the Eloise in her perilous position. We also agree with the District Court that a becalmed sailing vessel is in a perilous position, and that if the lookout on the Mohican had observed the warnings given by those aboard the Eloise, the accident could easily have been avoided. For these reasons we feel the District Court's finding that the Mohican was negligent must be sustained.

■ Appellant's final contention is that the Eloise was unseaworthy, since her mast was found to be in a deteriorated condition. Here again we are asked to reverse a finding of fact. Since this we cannot do unless the finding be clearly erroneous, we must examine the evidence which supports that finding. It seems established that there was a 10% deterioration in the mast, which, however, still left over 70% of the former strength. It also appears that the mast had only been installed on the Eloise for some 5 or 6 years—hardly long enough to be in a state of deterioration sufficient to make the sloop unseaworthy. It was further shown that the mast, which had a 14 inch diameter at the point where it pierced the deck, was much larger than is needed or ordinarily used on a sloop of this size, but that this extra large mast had been utilized in the dredging of oysters prior to the sale of the Eloise to libellant. In view of all these facts, we cannot reverse the finding of the District Court that the Eloise was seaworthy.

■ We find no merit in the contention of libellant that the damages should be raised from $2,000 to $2,500.

The decision of the District Court is affirmed.

Affirmed.