TOBIN v. ANTHONY–WILLIAMS
MFG. CO., Inc.
No. 14418.

United States Court of Appeals
Eighth Circuit.

May 6, 1952.

Rehearing Denied May 29, 1952.

548

'William A. Lowe, Attorney, U.S. Department of Labor, Washington, D.C. (William S. Tyson, Sol., Bessie Margolin, Asst. Sol., Washington, D. C., and Earl Street, Regional Attorney, Dallas, Tex., on the brief), for appellant.

L. B. Smead, Camden, Ark., for appellee.

Before SANBORN, WOODROUGH, and THOMAS, Circuit Judges.

WOODROUGH, Circuit Judge.

The Secretary of Labor instituted this action under Section 17 of the Fair Labor Standards Act of 1938, c. 676, 52 Stat. 1060, 29 U.S.C.A. § 201 et seq., as amended in 1949, c. 736, 63 Stat. 910, to enjoin the Anthony-Williams Company from violating the overtime compensation, record-keeping, and shipment provisions of the Act. After trial the District Court dismissed the complaint and this appeal followed.

On the appeal there are two distinct questions for consideration: 1) were certain truck drivers and woods workers "employees" of defendant within the meaning of the Act as contended by plaintiff, or were they independent contractors, as contended by the defendant and as was held by the trial court; and 2) did the District Court err in refusing to issue injunction against defendant in respect to the overtime, record-keeping and shipment requirements of the Act.

1. *The status of the truck drivers and woods workers.*

Defendant is a corporation organized under the laws of the State of Arkansas with its office and principal place of business at Kingsland, Arkansas. It is engaged in the production and sale of pine and hardwood lumber. The timber used by defendant in such production comes from lands owned by it and from other lands as to which defendant owns the timber rights. The timber is cut, and the logs hauled to the mill by truck. At the mill the logs are manufactured into pine and hardwood lumber, a substantial part of which is then sold and shipped in interstate commerce.

About three years prior to the trial (which was held in January of 1951), defendant made new arrangements with most of its employees who drove trucks hauling logs from the place where the timber was cut to the mill. Such haulers had previously been considered and paid as employees. Under the new arrangement, the truck drivers purchased their trucks from defendant and agreed to be paid for the logs hauled at a certain rate per thousand board feet hauled, dependent on the actual length of the haul. From this payment, the defendant would deduct $2 per thousand board feet hauled and would apply it on the purchase price of the truck. Of the five drivers whose cases are considered on this appeal (the District Court listed eight men in its memorandum, but the status of three of them is not presently in issue for one reason or another), four of them made no down payment on the purchase price of their trucks and one made a down payment of $350. None of the five pledged their credit in the purchase arrangement, or agreed to pay for his truck in any specified time, but only agreed to the $2 deduction above set out. In the papers signed in connection with the so-called "sale" of

the trucks, it was specified that the trucks were to be used only in connection with the business of defendant, and none of the five drivers did use the trucks for anything other than that business.

In the actual logging and hauling operation, the defendant's foreman specified the places where timber was to be cut, and if the timber was on land owned by defendant the specified trees to be cut would be marked; while if the trees were on land in which the defendant owned the timber rights, the size of timber to be cut would be specified. Defendant's foreman kept a close check on the whole operation, seeing to it that the stumps were cut to a proper height and that the workers cut high enough into the tree tops.

When the new arrangement was inaugurated, the defendant employed the men who cut down the timber and prepared it for loading on the trucks. About a year and a half before the trial, this arrangement was changed as to four of the haulers, and those haulers were required to hire their own woods workers and pay them. When this new arrangement was made, the rate per thousand board feet hauled paid to the haulers was raised by an amount approximately equal to the amount formerly paid to the woods workers by the defendant. The truck driver haulers then reimbursed the woods workers at the same rate of pay those workers had previously received from the company.

The truckers had to furnish the woods workers working under them with saws and axes, but defendant furnished the teams necessary to drag the logs from the point where they were cut down to the point where they were loaded on the trucks. The actual loading onto the trucks was done by a machine adapted for that purpose. This machine was owned by the defendant and was operated by a man who was admittedly an employee of defendant.

The work done by the haulers in question was necessarily limited by the amount of work done by the employee loader and also by the fact that the storage capacity of defendant for logs was limited. This lim-ited capacity necessitated a plan of rotating the work so that one hauler does not work every third day. The rotation plan was adopted by mutual agreement of the haulers.

It was shown that two admitted employees of defendant do the same work as do the haulers in question. The alleged independent contractor haulers made a little more or a little less money than the employee-haulers, dependent on the actual number of hours worked. The haulers in question had never lost money hauling, but "neither had they made much".

It is undisputed that the haulers in question worked more than 40 hours per week, and that if they were employees rather than independent contractors, then the defendant has violated the provisions of the Fair Labor Standards Act as to overtime compensation and as to record-keeping.

In his memorandum opinion the trial judge stated: "The facts in this case are similar to the facts in United States v. Silk, 331 U.S. 704, [67 S.Ct. 1463, 91 L.Ed. 1757] and the holding of the Supreme Court in that case will control here." Appellee adopts that theory here and predicates his position solely thereon. We agree that the Silk case controls this case, but we cannot agree that the application of the holding in that case will result in a holding that the haulers and woods workers in this case are independent contractors rather than employees.

In the Silk case, in discussing the Social Security Act, the Supreme Court stated, 331 U.S. at page 716, 67 S.Ct. at page 1469: "Probably it is quite impossible to extract from the statute a rule of thumb to define the limits of the employer-employee relationship. The Social Security Agency and the courts will find that degrees of control, opportunities for profit or loss, investment in facilities, permanency of relation and skill required in the claimed independent operation are important for decision. No one is controlling nor is the list complete."

Applying that general test, we think that the haulers and woods workers in this case must be held to be employees. De-

fendant, in effect, controls their activities. They are directed where and what to cut. The amounts of their deliveries are determined by the work of defendant's loader and by the capacity of defendant's storage facilities. The haulers have no substantial investment in their trucks, and their ownership is no more than nominal. They cannot use the trucks for other than defendant's business, even on days they are not working for the defendant. Defendant does not furnish the woods workers with saws and axes, but the teams necessary are furnished and owned by defendant. The haulers have small chance of any large financial return, and do not incur losses. Admitted employees perform identical work.

In the case of Rutherford Food Corp. v. McComb, 331 U.S. 722, 729, 67 S.Ct. 1473, 1476, 91 L.Ed. 1772, in applying the Fair Labor Standards Act to boners of meat in a slaughter house operation, the Supreme Court said: "We agree with the Circuit Court of Appeals, quoted above, in its characterization of their work as a part of the integrated unit of production under such circumstances that the workers performing the task were employees of the establishment. Where the work done, in its essence, follows the usual path of an employee, putting on an 'independent contractor' label does not take the worker from the protection of the Act.". The same analysis can be made here. Defendant owns the timber or the timber rights where the logs are cut. Defendant's employee loads the trucks at defendant's will. The haulers and woods workers here are such an integrated part of defendant's production set-up that it would take a much clearer showing than anything indicated by the testimony in this case to remove these haulers and woods workers from the category of employees. See also, Tobin v. LaDuke, 9 Cir., 190 F.2d 677.

The District Court erred in its declaration that the haulers and woods workers in this case were independent contractors.

## 2. As to the refusal to issue injunction.

The complaint filed against defendant charged overtime and record-keeping violations of the Act. A stipulation entered into between plaintiff and defendant showed violations of the record-keeping requirements with respect to those workmen who were admittedly employees and not independent contractors. The trial court found there were such violations. Plaintiff earnestly contends here that there were also violations of the Act by failure to pay overtime, and urges that the defendant's practices are not based on an allowable Belo-type contract. See Walling v. A. H. Belo Corp., 316 U.S. 624, 62 S.Ct. 1223, 86 L.Ed. 1716. Defendant does not argue the point and the trial court made no findings of fact or conclusions of law in that regard.

The failure to make such findings and conclusions must be corrected on remand of the case. Plaintiff charged violation of the overtime compensation requirement of the Act, and defendant, in its answer, specifically denied it. Evidence was adduced on the point. The District Court should make findings and conclusions thereon. Fed.Rules Civ.Procedure, rule 52(a), 28 U.S.C.A.; Mayo, Commissioner v. Lakeland Highlands Canning Co., 309 U.S. 310, 316, 60 S.Ct. 517, 84 L.Ed. 774; Bowles v. Russell Packing Co., 7 Cir., 140 F.2d 354.

With respect to the alleged error of the trial court in failing to enjoin violations of the record-keeping provisions which the court found did exist, and in view of the fact that the case is to be remanded on other grounds, we make the following statements for the guidance of the trial court in framing its order. It must be held, on the record before us, that the trial court erred in failing to enjoin defendant from continuing its record-keeping violations. The effective portion of the trial court's order is: "(e) That no restraining order issue herein against the defendant. (f) That the complaint herein be and the same is hereby declared to be dismissed".[1]

---

1. The order also included the following provision: "(a) That the defendant be, and it is hereby declared to be ordered

and directed to install such accounts and methods of keeping its records to comply with the regulations promulgated by

We recognize that there is discretion in the trial court in issuing or refusing to issue an injunction pursuant to Section 17 of the Act. But in this case no showing was made to the trial court as to what would be done to bring defendant's records into conformity with the requirements of the Act. No officer of defendant stated that the defendant would or would not comply. The only showing made of defendant's intention to comply was a statement said to have been made by its attorney. We infer such a statement was made to the trial court, but nothing to that effect appears in the record. On argument to this court defendant's attorney made the statement that the defendant intended to comply. Evidence adduced on the trial showed that the defendant had failed to comply up to the time of the trial, even after two warnings were given.

In that state of the record a case for issuance of injunction was clearly made out under the statute. In Lenroot v. Interstate Bakeries Corp., 8 Cir., 146 F.2d 325, 329, this court, in discussing a refusal to enjoin violations of the child labor provisions of the Fair Labor Standards Act, stated: "The proof made constituted 'cause shown * * * to restrain violation of section 15' within the meaning of section 17 of the Act in the absence of satisfactory evidence that there had been such change in conditions, personnel or method of employing and keeping a check on operations as to assure discontinuance of the violations in the Kansas City plant. The trial court stated in its findings that 'the responsible officials of the company are sincerely endeavoring to operate in compliance with the letter of the law as well as its spirit', but the record clearly shows that not one of the company's higher officers or home office officials attempted to explain the failure to take adequate measures during the years the Act has been in effect, nor did any one of them testify as to any new or additional measures which would be taken to prevent violations in the future."

plaintiff". But in view of the dismissal of the complaint and the refusal to grant the relief specified in Section 17 of the

In Lenroot v. Kemp, 5 Cir., 153 F.2d 153, 156, the Court of Appeals for the Fifth Circuit reversed a judgment denying injunction against violations of the Fair Labor Standards Act, and called attention to the fact that a co-partner had testified that defendant in that case would comply but he had not indicated what his co-partner's attitude would be, and had not "referred to action, if any, taken or to be taken to insure against future infractions of the law." The court further stated, "Confronted with facts showing active violations, belief in a future course of law-observance, based merely upon the defendants' reputation of being law-abiding, is not enough. Lip service to a law, with background of violations, does not guarantee future compliance."

And in this case it may be noted again that no testimony was adduced as to the attitude of defendant nor as to any steps taken, or to be taken, to insure future compliance. The hopeful expressions of its attorney could not justify denial of the injunction specified in the statute, either in respect to the record-keeping or the overtime violations.

Reversed and remanded for further proceedings in conformity with this opinion.

Act, the provision appears to be merely monitory and not mandatory.