**DURKIN, Secretary of Labor, v. BELL et al.**

No. 1062.

United States District Court
W. D. Arkansas, Fort Smith Division.

May 1, 1953.

Harry N. Routzohn, Sol., Washington, D. C., Earl Street, Regional Atty., Dallas,

Tex., Truett E. Bean, Dallas, Tex., for plaintiff.

G. L. Grant, Fort Smith, Ark., for defendant.

JOHN E. MILLER, District Judge.

The plaintiff as Secretary of Labor instituted this action under Section 17 of the Fair Labor Standards Act of 1938, 52 Stat. 1060, as amended in 1949, 63 Stat. 910, 29 U.S.C.A. § 201 et seq., to enjoin the defendant from violating the overtime compensation and record keeping provisions of the Act.

The answer of defendant was filed on March 9, 1953, and on the same date defendant propounded to the plaintiff nine interrogatories under Rule 33, F.R.C.P., 28 U.S.C.A. The interrogatories were answered by plaintiff on March 24, 1953. On April 1, 1953, plaintiff propounded to defendant seven interrogatories under the rule, which interrogatories were answered by defendant on April 27, 1953.

On April 13, 1953, the Court set the case for trial on its merits on April 29, 1953, and at the trial plaintiff introduced six witnesses, together with exhibits to their testimony, including the defendant, Robert B. Bell, who was called for cross examination under Rule 43(b), F.R.C.P.

The defendant, together with exhibits to his testimony, was the only witness in his behalf.

At the conclusion of the trial the case was submitted and the Court advised the parties that findings of fact and conclusions of law would be filed as soon as might reasonably be done, and upon which the judgment of the Court would be entered, and the Court after considering the pleadings, the ore tenus testimony of the witnesses, and the exhibits, now makes and files the following findings of fact and conclusions of law, separately stated.

### Findings of Fact

1.

The plaintiff, Martin P. Durkin, is the Secretary of Labor, United States Department of Labor, and the suit was filed by him in his official capacity.

The defendant is a citizen of the State of Arkansas and resides in the City of Mena, Polk County, within the Fort Smith Division of the Western District of Arkansas and is now and was at all times material herein the sole owner and operator of a radio station under the name and style of KENA Broadcasting Company. In the operation of the radio station he engages in commercial radio broadcasting and in receiving, handling, transmitting and disseminating news and communications in interstate commerce.

2.

The defendant has been operating the station for approximately two years. During the latter part of April, 1952, the business was investigated by Harold A. Loser, an investigator of the Wage and Hour Division of the Department of Labor, and at that time the investigator advised the defendant that he was not keeping proper records of the hours worked by his employees, but did not advise defendant wherein his records were defective except that he did leave with the defendant a bulletin which merely directed that a person engaged in business in interstate commerce to which the Fair Labor Standards Act applied should in general keep such records as to reveal the names of the employees, the hours worked and their rate of pay. This investigator did not leave with the defendant any official information or regulations and evidenced no inclination or desire to assist the defendant in setting up a system of records that might meet the technical requirements of the Wage and Hour Division.

3.

In July, 1952, and in the early part of October, 1952, the defendant was again investigated by Investigator Shelby R. Gott, and Gott positively refused to offer any suggestions of any kind to the defendant or to advise him in any manner as to the records that plaintiff is now insisting were not properly kept.

The defendant in his testimony detailed what occurred between him and Investigator Gott and the refusal of the investigator to offer any suggestions notwithstanding the request of the defendant and the statement of the defendant to the investigator that he desired to fully comply with the law. This investigator was present in the court room at the time and heard the testimony of the defendant, but for some reason the investigator was not recalled to the witness stand and there was no denial of the positive testimony of the defendant in that respect.

4.

The defendant has had three engineer-announcers in his employ prior to and since April 24, 1952. Mr. O. D. Frederick, the chief engineer and announcer, and Mr. C. H. Hill, engineer and announcer, testified as witnesses for plaintiff. The other engineer-announcer, Mr. Lynn Bradley, was not present as a witness. Both Mr. Frederick and Mr. Hill testified as to their duties and testified that they spent 32 hours per week as announcers and in addition to that did such work as was necessary to keep the equipment in working order. Likewise they both testified that they were not working more than 40 hours per week except in rare instances and when they did work more than 40 hours per week they were paid overtime compensation at the rate of one and one-half times their regular rate of pay.

Mr. Hill testified that on one occasion about one year ago he advised the defendant that he had worked during one week something like one hour overtime and that the defendant advised him that he had raised his salary and increased his rate of pay, and the witness stated then that was satisfactory and to forget about that particular overtime. No witness was produced who claimed any overtime compensation to be due, and the testimony of the defendant disclosed that he had paid each and every employee overtime compensation when they in fact worked any overtime.

Miss Johnnie Louise DeShazo testified on behalf of plaintiff that she graduated from the Mena High School in June 1951 and on the 18th day of that month was employed by the defendant as a script writer, and she was advised by the defendant that she should not work more than 40 hours per week. Her rate of pay at the beginning was seventy-five cents per hour, and after

the visit of Investigator Harold A. Loser, she insisted upon working some overtime, and contrary to the orders of the defendant she claimed to have worked overtime during the weeks ending May 18, May 25 and June 1, 1952. Her claims of overtime were paid by the defendant and she was discharged because of her refusal to obey orders. But this witness did not claim that there is now due her any overtime compensation.

5.

Under the regulations of the Federal Communications Commission a radio station is required to maintain two records designated as (1) transmitter log, and (2) program log. The engineers or other maintenance employees are required to sign the transmitter log at the time they arrive at the station and take charge of the equipment. If the engineer is an announcer, as were all of them in the instant case, he is required to sign the program log showing the time that the equipment was turned on for broadcasting purposes and likewise both logs were required to be signed at the time the employee was relieved by another employee or at the time the station was closed and went off the air.

In response to the interrogatories of plaintiff the defendant filed a detailed copy of the record of the operations of the station showing the hours that the station was on the air, the various programs that were broadcast, who the employees were and the hours worked by them. The response of the defendant to those interrogatories comprises 43 typewritten pages, most of them being single spaced. This response was introduced in evidence as plaintiff's exhibit 2. In addition to this the defendant was required under a subpoena to produce (1) books and records of the wages paid to employees between April 24, 1952, and April 25, 1953; (2) books, time cards and pocket time books and daily program schedules recording hours worked and date and time signed on duty and signed off duty each work day and each work week of the employee during the period from April 24, 1952, to April 25, 1953; and (3) other documents, books and records revealing radio programs originating outside the State of Arkansas and which were transmitted during the period from April 24, 1952, to April 25, 1953.

These records were produced by the defendant and near the conclusion of the trial the plaintiff moved that the trial be suspended until the transmitter log might be obtained. The motion was overruled for the reason that plaintiff had from time to time inspected the transmitter log and had made certain excerpts therefrom which were introduced in evidence. Defendant had produced all records that were requested in the subpoena duces tecum.

6.

The defendant produced the pocket time books which were introduced in evidence as plaintiff's exhibits numbers 3, 4, 5, 6, and 7. These exhibits disclose that the name of each employee was entered therein and the regular hourly rate of pay that the employee received. For illustration, Exhibit 3 shows that for the work week ending April 20, 1952, the chief engineer and announcer, O. D. Frederick, worked 40 hours and that his rate of pay was $1.62½ per hour; that engineer-announcer C. H. Hill during that week worked 40 hours and that his regular rate of pay was $1.32½ per hour; that the then engineer-announcer John Redman worked 40 hours and that his rate of pay was $1.15 per hour; and that Johnnie Louise DeShazo worked 40 hours and that her regular rate of pay was $.75 per hour. The time books generally show that each and every employee worked 40 hours per week and without a doubt all of them were paid for 40 hours per week, but the defendant, as well as Mr. Frederick and Mr. Hill, testified that very often they did not actually work 40 hours, but that the agreement was that they should be paid for 40 hours and they were paid, and during the few weeks that they worked overtime they were paid therefor at one and one-half times the regular rate.

The defendant has four regular employees and his wife and he work at the station. The station is on the air 111 hours per week. It goes on the air at 6:00 a. m. on week days and at 7:00 a. m. on Sundays, and stays on the air until 9:30 or

10:00 p. m. Of the employees, three are, as heretofore stated, engineer-announcers and each of these employees devote 32 hours per week to announcing. The beginning of the hours of each announcer changes from time to time. To illustrate, one engineer-announcer is assigned to open the station for a certain number of days and then is succeeded by the second announcer who in turn is succeeded by the third announcer, so that on that particular tour of duty the third announcer closes the station at night. There is no dispute but that the engineer-announcer who opens the station is required to be on duty from seven to fifteen minutes prior to 6:00 a. m. The equipment must be turned on seven minutes before 6:00 a. m., but the regulations of the Federal Communications Commission require that when an engineer reports he shall sign the transmitter log and when he begins announcing he shall sign the program log. Thus there is often a few minutes discrepancy between the time shown on the program log and the transmitter log, but the two engineer-announcers who testified were positive that the time of their reporting on the mornings that they opened the station, when added to the time spent in announcing, did not exceed 40 hours per week except in rare instances for which they were paid overtime. Naturally the third engineer-announcer, whose duty it is to close the station, spends no time after the station goes off the air, with possibly three or four minutes to obtain his hat, coat and other personal belongings preparatory to leaving work. The script writer does not work more than 40 hours per week, although Johnnie Louise DeShazo attempted to do so contrary to the orders of the defendant.

The time records of the defendant disclose that they are not in strict accordance with Section 516.2 of Part 516 of the regulations of the United States Department of Labor, Wage and Hour and Public Contracts Division, dated August, 1952, in that such records do not disclose the actual time worked by each engineer-announcer each week. Generally speaking, those records show that each of those employees worked 40 hours per week, whereas in most instances they were not on duty more than 35 hours per week. There is no occasion for the script writer to be on duty more than 40 hours per week and the defendant has made every effort to so arrange the business that no employee will be required to work overtime. These same records, while disclosing payments to each employee for 40 hours per week at the regular rate of pay, also disclose payment of overtime when such overtime is actually worked. Thus the only error in the time records is that they do not disclose the actual time worked, except when the employee worked more than 40 hours. In other words, the engineer-announcer who follows the engineer-announcer who opens the station never works more than 32 hours per week; yet the record shows that he worked 40 hours and was paid for 40 hours. Likewise the engineer-announcer who closes the station never works more than 32 hours per week, plus such time as it requires him to push some buttons, close the station and leave.

The defendant is the sole owner of the radio station. His testimony was frankly given and he stated that he had done everything he could to try to comply with the regulations of the Wage and Hour Division in reference to the keeping of records, and that barring mistakes he owed no one any overtime compensation. The defendant testified that in an effort to obtain information he consulted with other industries that had been investigated by the Wage and Hour Division and had compared their books with his books. He asked not to be required to name the industries with which he had compared his books and the Court refused to permit plaintiff to interrogate him as to the identity of such industries for the reason that there has been other litigation in this Court with one industry located at Mena and the plaintiff knew full well the contents of the records of the industries engaged in interstate commerce and located at Mena, Arkansas. The testimony of the witnesses, including that of the defendant, convinces the Court that the defendant is anxious to conform in every particular with the requirements of the Fair Labor Standards Act, and the de-

fendant unequivocally testified that he would comply if he was not already in compliance. He evidenced no opposition to the law and no employee has received less than the minimum wage. All employees were paid all overtime compensation due them.

### Conclusions of Law

1.

The Court has jurisdiction of the parties to and the subject matter of this cause of action.

2.

The facts as disclosed by the testimony do not constitute sufficient "cause shown" to enjoin defendant from violating the provisions of Sections 15(a)(2) and 15 (a)(5) of the Fair Labor Standards Act.

In Beatty v. United States, 8 Cir., 191 F.2d 317, 321, Judge Johnsen in speaking for the Court said:

> "Blanket injunctions against general violation of a statute are repugnant to American spirit and should not lightly be either administratively sought or judicially granted."

In Tobin v. Anthony-Williams Mfg. Co., Inc., 8 Cir., 196 F.2d 547, 551, the Court speaking through Judge Woodrough said:

> "We recognize that there is discretion in the trial court in issuing or refusing to issue an injunction pursuant to Section 17 of the Act."

It would be an abuse of discretion for this Court to enjoin the defendant upon the showing made, and the complaint of plaintiff should be dismissed, and a judgment in accordance with the above should be entered.