James P. MITCHELL, Secretary of Labor,
United States Department of Labor,
Plaintiff.

v.

J. W. REYNOLDS and Mrs. Velma Jeanne
Rutledge, individually, and as co-part-
ners, doing business as J. W. Reynolds
Lumber Company, Defendants.

Civ. No. 628.

United States District Court
W. D. Arkansas, El Dorado Division.

Nov. 12, 1954.

Stuart Rothman, Solicitor, Washing-
ton, D. C., Earl Street, Regional Atty.,
Dallas, Tex., Harry Campbell, Jr., Asst.
Regional Atty., for plaintiff.

Robert Compton, Walter L. Brown, El
Dorado, Ark., L. B. Smead, Camden,
Ark., for defendants.

JOHN E. MILLER, District Judge.

On April 21, 1954, plaintiff filed his
complaint against defendants seeking to

enjoin them from allegedly violating the overtime, record keeping, and shipping provisions of the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq.

The defendants on June 23, 1954, filed their answer in which they denied violating the Act. Thereafter, plaintiff served upon defendants certain interrogatories and requests for admissions, which in due time were answered by defendants.

Upon the issues thus joined the case was tried to the Court, without a jury, on October 27, 1954, and at the conclusion of the trial the Court, having considered the pleadings, ore tenus testimony of the witnesses, interrogatories and request for admissions and responses thereto, exhibits, and contentions of the parties, orally announced its findings of fact and conclusions of law, and in accordance therewith the Court now makes and files herein its formal findings of fact and conclusions of law, separately stated.

## Findings of Fact

### 1.

The plaintiff is the Secretary of Labor, United States Department of Labor. The individual defendants are citizens and residents of the Western District of Arkansas, El Dorado Division, and are doing business as a partnership under the name of J. W. Reynolds Lumber Company.

### 2.

Prior to 1954, Investigators of the Wage and Hour Division of the Department of Labor had investigated defendants' business several times. On at least one of these occasions it was discovered that defendants were not in full compliance with the Fair Labor Standards Act, and defendants were required to make additional payments to some of their employees, apparently for unpaid overtime compensation. However, in each of these investigations defendants cooperated fully with the Investigators and made an honest effort to meet the requirements of the Act.

In fact, defendants were so desirous of complying with the Act that they em-

ployed John F. Stroud, a former Investigator of the Wage and Hour Division, to check their books periodically and assist them in complying with the Act. Mr. Stroud first began working for defendants in July of 1950, and at that time he ascertained that defendants' books were apparently being kept properly, but noticed that certain employees were turning in the same number of hours each week.

Due to the nature of the work, it was not feasible for the defendants' supervisory personnel to keep an accurate record of the number of hours worked each week by each employee, and beginning in July, 1950, certain employees were given individual time cards upon which they were to record the number of hours they worked each day and each week. Most of these employees had been working for defendants for a number of years, and were trusted with the keeping of their own hours. At the time the cards were given to the employees Stroud instructed them to keep an accurate record of the actual number of hours they worked each week, and J. L. Toland, defendants' bookkeeper and office manager, typed the following notation upon the backs of the employees' first time cards:

"In line with your talk to Mr. Stroud in regard to your working hours, please fill in the exact number of hours you have worked and at the end of each pay period please turn in your time card and pick up a new card for the next period. J. L. Toland."

Subsequent to that time, and up until April of 1954, Stroud, Toland and N. B. Rutledge, Manager of the Company, each instructed the employees from time to time that they should keep an accurate record of the actual number of hours worked each week. However, some of the employees did not keep an accurate record of the number of hours they worked, but instead recorded the same number of hours every week or every two weeks. There were two reasons for the employees' failure to keep accurate records of the number of hours worked.

First, they thought it was unnecessary and was too much trouble, and second, they wanted to be assured of the same amount of pay each pay period, even though some weeks they might not work the required number of hours they thought necessary to entitle them to receive the same amount of pay for each pay period.

## 3.

In January and February of 1954, Charles F. Routon, Jr., an Investigator of the Wage and Hour Division, made an investigation of defendants' business. He discovered that several of the employees were not recording the actual number of hours they worked each week, and also learned that one of the persons defendants had classified as an executive or administrative employee did not meet the necessary requirements for such an exemption. As a result of this investigation, and the fact that prior investigations of defendants' business had revealed some violations of the Fair Labor Standards Act, plaintiff instituted the present action seeking to enjoin any further violations of the Act by defendants.

In the meantime defendants, having been informed by Investigator Routon of the violation by certain employees in failing to keep a record of the actual hours worked, again discussed the matter with the particular employees and demanded of them that they record the actual number of hours they worked. Since April, 1954, all of defendants' employees, with the exception of Chester C. Jones, have been keeping accurate records of the actual number of hours they work each week.

## 4.

Specifically, prior to April, 1954, the following employees failed to record the actual number of hours they worked each week: H. G. Alston, saw filer, D. C. Brian, charged with duty of maintaining planer equipment, Jim Crawford, sawyer and charged with duty of maintaining saw mill equipment, Chester C. Jones, woods supervisor, also having other duties in connection with timber, Dave Purser, saw filer, and T. R. Sturgis, lumber checker. Subsequent to April, 1954, all of the employees except Jones have kept and recorded the actual number of hours they worked each week.

## 5.

Both prior to and after April, 1954, defendants' books were properly kept insofar as the office records were concerned. That is, if the employees had turned in the actual number of hours worked, the office records would have been accurate and the employees would have received proper overtime compensation. But, the failure of the named employees to record the actual number of hours worked by them resulted in them receiving a slightly different amount of overtime pay than they would have received if the hours had been properly recorded. However, since April of this year all the records have been properly kept and overtime pay has been correctly determined, except on Chester C. Jones who was carried as an administrative employee.

## 6.

The defendants employed and are now employing approximately 100 employees in and about their place of business in Smackover, Arkansas, in the production of rough and finished pine and hardwood lumber. Substantially all of the goods produced by these employees have been, and are being, produced for interstate commerce, and have been, and are being, shipped, delivered, transported, offered for transportation and sold in interstate commerce.

## 7.

During the period in question defendants at all times had more than twelve employees employed in planting or tending trees, cruising timber, surveying or felling timber, or in preparing or transporting logs or other forestry products to the defendants' sawmill, or to transportation terminals.

## 8.

Chester C. Jones was hired by defendants as a Woods Foreman at a salary of

$250 per month. His duties include the supervision of the log crew, the buying of timber, scaling of logs, and related items. At least one-third of his time is spent away from the log crew.

### Discussion

The plaintiff concedes that defendants are now and since April of this year have been in compliance with the Fair Labor Standards Act with respect to all the employees except Chester C. Jones. But plaintiff contends that defendants' past violations, together with the present violation with respect to Jones, are sufficient to invoke the Court's discretion and to necessitate an injunction against the defendants.

The defendants, on the other hand, contend that their past violations were technical rather than substantial; that they endeavored to comply with the Act; that they are presently in compliance as to all employees except Jones, and that they will immediately comply as to the said Jones; and that the Court should, in the exercise of a sound judicial discretion, refrain from issuing the injunction sought by plaintiff.

The issuance of an injunction under Section 17 of the Fair Labor Standards Act, 29 U.S.C.A. § 217, addresses itself to the sound discretion of the Court. Tobin v. Anthony-Williams Mfg. Co., Inc., 8 Cir., 196 F.2d 547, 551; Durkin v. Bell, D.C.Ark., 111. F.Supp. 599, 603. See also, Tobin v. Little Rock Packing Co., 8 Cir., 202 F.2d 234. It has been said that "Blanket injunctions against general violation of a statute are repugnant to American spirit and should not lightly be either administratively sought or judicially granted." Beatty v. United States, 8 Cir., 191 F.2d 317, 321; Durkin v. Bell, supra, at page 603 of 111 F.Supp. But, if a defendant violates the Act, and expresses no intention of conforming in the future, the duty devolves upon the Court to issue the proper injunction. Tobin v. Anthony-Williams Mfg. Co., supra.

In the instant case, prior to April, 1954, defendants violated Sections 6, 7 and 15 of the Fair Labor Standards Act, 29 U.S.C.A. §§ 206, 207, 215, as a result of the failure of certain employees to record the actual number of hours they worked each week. In this connection, while there is nothing to prevent an employer from delegating to his employees the duty of keeping a record of their hours, the employer does so at his peril. He cannot escape the record keeping provisions of the Act by delegating that duty to his employees. See, Walling v. Sun Pub. Co., D.C.Tenn., 47 F. Supp. 180, 191, affirmed in 6 Cir., 140 F.2d 445, certiorari denied 322 U.S. 728, 64 S.Ct. 946, 88 L.Ed. 1564. However, since April, 1954, all of defendants' employees except Jones have kept records of the actual number of hours they worked, and since that time defendants have been in full compliance with the Act except with respect to the said Jones.

The defendants have been paying Jones upon a straight salary basis upon the assumption that he is an executive or administrative employee exempted from the Act by Section 13, 29 U.S.C.A. § 213. The said Jones, however, fails to meet the requirements of a bona fide executive or administrative employee. His salary, being $250 per month, is not sufficient to entitle him to an administrative classification, since a salary of at least $75 per week is required. 29 Code of Federal Regulations, Sec. 541.2(e). And, inasmuch as he devotes one-third of his time to activities of other than a supervisory nature, he does not qualify for the executive exemption, which permits a maximum of twenty per cent of the employee's time to be spent in activities that are not of a supervisory nature. 29 C.F.R. 541.1(e). It follows that defendants are in error, and are in violation of the Act, in classifying the said Jones as an executive or administrative employee, but the defendants expressed an earnest desire to comply with the Act and the Court is convinced that they will immediately correct their error with respect to Jones.

It is true that defendants have violated the provisions of the Act, but they are presently in complete compliance, except with respect to the said Jones, and are apparently sincere in their desire to comply fully with the Act. In view of these facts, the Court is of the opinion that an injunction would not be justified, and that plaintiff's complaint should be dismissed.

In passing it may be stated that plaintiff is not to be criticized for bringing the instant suit. At the time the suit was filed, April 21, 1954, defendants had been in violation of the Act, and it may be more than a coincidence that it was in the month of April that defendants' employees began recording the actual number of hours they worked. In other words, the filing of the suit in all probability expedited the action of defendants in fully complying with the Act, but the court is convinced that defendants thought they were in compliance at all times and their action in employing an expert, a former Wage-Hour investigator, to check their books every month and to advise them fully substantiates their verbal expressions of their intention and desire to comply at all times with the law.

### Conclusions of Law

1.

The Court has jurisdiction of the parties to and the subject matter of this proceeding.

2.

Prior to April, 1954, defendants violated the overtime, record keeping and shipping provisions of the Fair Labor Standards Act with respect to six of its employees. 29 U.S.C.A. §§ 206, 207, 215.

3.

Defendants' employee, Chester C. Jones, is not entitled to an administrative or executive classification under the Act.

4.

Since April, 1954, defendants have been in full compliance with the Fair Labor Standards Act with respect to all their employees except the said Chester C. Jones.

5.

In view of defendants' present compliance and intention to comply in the future, an injunction should not be issued, and the complaint of plaintiff should be dismissed.

A judgment in accordance with the above should be entered.