**Ray MARSHALL, Secretary of Labor, United States Department of Labor, Appellant, Cross-Appellee,**

v.

**TRUMAN ARNOLD DISTRIBUTING COMPANY, INC., a corporation, Appellee, Cross-Appellant.**

**Roadrunner Service Stations, Inc., Truman Arnold, an individual.**

**Nos. 80–1423, 80–1424.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 15, 1981.

Decided Feb. 12, 1981.

Mary-Helen Mautner, U. S. Dept. of Labor, Washington, D. C., for appellant, cross-appellee.

LeRoy Autrey, Autrey & Weisenberger, Texarkana, Ark., for appellee, cross-appellant.

Before HEANEY, Circuit Judge, GIBSON, Senior Circuit Judge, and STEPHENSON, Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

This case involves the application of the minimum wage and overtime provisions of the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201–219 (1976), to the operators of gasoline service stations subject to restrictive lease agreements from the Truman Arnold Distributing Company, a gasoline distributor. The United States District Court for the Western District of Arkansas[1] found the lessees to be employees within the meaning of the FLSA. The court, in a forty-six page memorandum opinion, enjoined the company from further violations and awarded back pay to those individuals able to demonstrate underpayment. The Secretary of the Department of Labor appeals the findings of the District Court with regard to the denial of a back pay award to eight individuals who did not testify concerning their hours of employment. The Secretary also appeals the District Court's (1) allowance of a credit for living quarters at four of the stations; (2) failure to enjoin Truman Arnold individually; and (3) finding that an employee was also a supervisor and thus exempt from the FLSA. The company cross-appeals the District Court's finding that the lessees and their employees were employees under the FLSA. We affirm the District Court on all issues except the court's denial of back pay to the individuals who did not testify at trial. On that issue we reverse and remand for an evidentiary hearing on the extent of the hours worked by the individuals, in order to determine the proper back pay, if any, which is owing to them.

*Definition of "employee"*

■ The District Court found the lessees to be employees within the meaning of the FLSA, 29 U.S.C. § 203(e)(1). The Act itself, however, provides little guidance concerning the limits of the employer-employee relationship.[2] *See Rutherford Food Corp. v. McComb*, 331 U.S. 722, 728, 67 S.Ct. 1473, 1475, 91 L.Ed. 1772 (1947). The determination of the relationship depends "upon the circumstances of the whole activity." *Id.* at 730, 67 S.Ct. at 1476. The District Court made the following finding of fact with regard to the lessees:

When we examine the relationship between Truman Arnold Distributing Company and the 25 so-called lessees, we find that they were employees, not independent contractors. Truman Arnold Distributing Company had the right to control the details of how each lessee ran the station. Truman Arnold Distributing Company did not exercise its control with respect to the firing and hiring of assistants by each lessee, but it exercised its control in many other and more important ways. Truman Arnold Distributing Company controlled the hours of operation, the prices to be charged for the major items sold at the station, the physical appearance of the stations and the daily management of money. By controlling these details of the operation of each station, it was, in effect, controlling how each lessee used his or her assistants. The mere fact that Truman Arnold Distributing Company allowed each lessee to determine whom it would hire as a station helper does not change the fact that Truman Arnold Distributing Company exercised almost complete dominion over every detail of each station.

■ We cannot say that this finding is "clearly erroneous." *See* Fed.R.Civ.P.

1. The Honorable Paul X Williams, Chief Judge, United States District Court for the Western District of Arkansas.

2. Section 203, subsections (d), (e)(1), and (g) provide:

(d) "Employer" includes any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency, but does not include any labor organization (other than when act-

ing as an employer) or anyone acting in the capacity of officer or agent of such labor organization.

(e)(1) Except as provided in paragraphs (2) and (3), the term "employee" means any individual employed by an employer.

\* \* \* \* \* \*

(g) "Employ" includes to suffer or permit to work.

52(a); *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948). Essentially, the lessee of the station provided only his labor or services. In return, he or she received a minimum guaranteed payment and a small percentage commission on the amount of gasoline sold. The risk of profit or loss, as well as managerial discretion, remained in the control of the company. The District Court did not err in finding an employer-employee relationship.[3]

The company also argues that the District Court erred in finding the employees or attendants hired by the lessees to be also employees of the company. While the lessees did hire the attendants, the company's use of an intermediary to employ workers does not insulate the company from the provisions of the FLSA. *See Tobin v. Anthony-Williams Manufacturing Co.*, 196 F.2d 547, 549–50 (8th Cir. 1952). The attendants hired by the lessees were as much "an integrated part of" the company's retailing operation, *id.* at 550, as the lessees were themselves. We find no error, and dismiss the company's cross-appeal.

*Credit for living quarters*

■ The Secretary contends that the District Court erred in granting a $300 per month credit to four lessees who were provided with living quarters at four non-24-hour gasoline stations. The $300 figure was arrived at by using the value specified in the lease agreement. The District Court found that the Secretary was not able to present sufficient evidence that the true value of the quarters was other than "the agreed price of $300.00 per month." Furthermore, the court found the quarters to

be a desirable feature and that some of the lessees considered them to be attractive.

The Secretary does not contest these findings, but argues that the quarters were for the primary benefit of the company in that they deterred crime and vandalism. Therefore, he argues that the imputed rent should not be included in computing wages. *See* 29 C.F.R. § 531.3(d)(1) (1979). The District Court found the quarters to be the result of a voluntary contractual negotiation between the parties. There is no doubt that the company gained some incidental benefit from the lessee living on the premises of the station. We cannot say, however, that the primary benefit was not to the tenant. In addition, the District Court's assigning the value of $300 per month to the living quarters cannot be found to be clearly erroneous, given the value assigned to the quarters in the contract. Undoubtedly the living quarters would be more attractive or beneficial to some lessees than to others. The lessee was free to accept or reject the employment contract. In the absence of a finding by the trial court of overreaching by the company, the contractual value will not be set aside.

*Denial of the injunction against Truman Arnold as an individual*

■ The District Court dismissed Truman Arnold as an individual from the action on the basis that he neither dealt with the lessees during the time for which back pay was being sought nor did he have any current dealings with them. There is no dispute over the company's financial ability to sustain any fines or to comply with the injunction. The Secretary does argue that

---

**3.** The company also contends that the definition of an employee under the Petroleum Marketing Practices Act of 1978, 15 U.S.C. §§ 2801–2806 (Supp. III 1979), and under section 530 of the Revenue Act of 1978, Pub.L. No. 95–600, 92 Stat. 2763, 2885, are persuasive authority for finding that the lessees are independent contractors for purposes of the FLSA. We disagree. The Petroleum Marketing Practices Act is not applicable to petroleum products not sold under the trademark of a refiner. The company here never refined any oil into gasoline. Section 530 of the Revenue Act of 1978 does not redefine an employee-employer relationship. It provides only that the company may continue to use its determination of whether such a relationship exists unless there is no reasonable basis for doing so for taxation purposes. In the case at hand, the Secretary is charged with the enforcement of the FLSA and has made his determination that an employee-employer relationship exists, a determination with which we agree. In addition, the Petroleum Marketing Practices Act, which was approved on January 19, 1978, did not take effect until 1979.

Arnold should be enjoined personally because of the possibility that he may change the corporate structure of the gasoline distributorship in order to avoid the injunction. Appellant's brief at 38. We find this possibility extremely speculative and remote. The trial court did not abuse the discretion it may exercise in issuing or refusing to issue an injunction. *See Marshall v. Van Matre*, 634 F.2d 1115, 1117 (8th Cir. 1980); *Tobin v. Anthony-Williams Manufacturing Co., supra*, 196 F.2d at 551. *See also Marshall v. Lane Processing, Inc.*, 606 F.2d 518, 519 (8th Cir. 1979), *cert. denied*, 447 U.S. 922, 100 S.Ct. 3013, 65 L.Ed.2d 1114 (1980). Should Truman Arnold attempt to circumvent the injunction rendered against the company, the Secretary will be free to seek an injunction against Arnold personally. We note that the trial court found that the company acted in good faith in its manner of dealing with the lessees. The company did not intentionally violate the FLSA and there is no past history of violations committed by the company or by Arnold. There is no reason to presume bad faith on Arnold's part in response to the injunction rendered against the company.

### The executive-employee exemption of Dennis Martindill

■ The trial court found Dennis Martindill to be an executive employee of the company and therefore exempt from the minimum wage and overtime provisions of the FLSA under section 213(a)(1).[4] The Secretary argues that Martindill performed only ministerial routine duties and that his primary duty was not managerial in nature. *See* 29 C.F.R. § 541.1(a) (1979).

The regulations promulgated by the Secretary suggest criteria to be used in determining managerial capacity. When less than fifty percent of the employee's time is spent on management, the factors to be looked to are "the relative importance of the managerial duties as compared with other types of duties, the frequency with which the employee exercises discretionary powers, his relative freedom from supervision, and the relationship between his salary and the wages paid other employees for the kind of nonexempt work performed by the supervisor." 29 C.F.R. § 541.103 (1979).

The record reveals that Martindill hired, supervised, trained, kept time on, and paid employees to work for him at the station he leased. Martindill performed other managerial duties, including bookkeeping, and ordered various sundry items. The Secretary has failed to show that the trial court's finding that Martindill was an executive employee under the FLSA was clearly erroneous. In Martindill's case, this factual determination is a close one, but we cannot say the District Court erred in its holding.

### The omission of Clayton Mixon from the back pay award

■ Both the Secretary and the company agree that Clayton Mixon was inadvertently omitted from the list of attendants entitled to a back pay award. The District Court should correct this omission upon remand.

### Denial of back pay to eight lessees who did not testify

The District Court awarded back wages to seventeen lessees who testified at the trial. All of these lessees testified at trial. The Secretary sought back pay for eight other lessees who, except for one, were present at trial but were not called to testify. The court refused to award back pay on the ground that the Secretary had "presented no proof upon which the Court could make a finding of fact that any of the

---

4. 29 U.S.C. § 213(a)(1) provides in relevant part:

§ 213. Exemptions

(a) The provisions of section 206 (except subsection (d) in the case of paragraph (1) of this subsection) and section 207 of this title shall not apply with respect to—

(1) any employee employed in a bona fide executive, administrative, or professional capacity * * *, or in the capacity of outside salesman (as such terms are defined and delimited from time to time by regulations of the Secretary, subject to the provisions of the Administrative Procedure Act[.] * * *)

eight * * * lessees performed any work upon which claims for back wages could be based[.]"

The Secretary argues that the trial court erred in the proper application of the burdens of proof for establishing a claimant's back pay entitlement. In *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–88, 66 S.Ct. 1187, 1191–92, 90 L.Ed. 1515 (1946), the Supreme Court set out the relevant standards to be applied to the situation where the employer has not kept the proper records for the amount of work performed:

An employee who brings suit under § 16(b) of the Act for unpaid minimum wages or unpaid overtime compensation, together with liquidated damages, has the burden of proving that he performed work for which he was not properly compensated.

* * * [Where the employer fails to maintain proper records,] [i]n such a situation we hold that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

The Secretary contends that he in fact presented sufficient evidence to meet the employee's initial burden. The Secretary prepared earnings projections for the eight lessees based upon earnings statements, commissions, and the requirements of the leases, factoring in the hours the station was to be open plus the amount of the lessee's compensation to be used for hired attendants. In addition, the Secretary presented the testimony of seventeen of the lessees concerning their overtime employ-ment. We find that the Secretary's presentation, while adequate to establish that the eight lessees were entitled to overtime compensation, did not produce "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id.* at 687, 66 S.Ct. at 1192.

Standing alone, the projections of the Secretary concerning the hours worked by the lessees were sufficient to meet the employees' initial burden. The company, however, substantially rebutted the projections as applied to the seventeen lessees who did in fact testify. The court awarded less than fifty percent of the amount claimed. This reduction was primarily the result of cross-examination of the lessees by the company.

The validity of the Secretary's wage projections as applied to the other eight lessees who did not testify was thereby undermined. At this point, the District Court should have required the Secretary to introduce more direct evidence on the eight lessees who did not testify.

To reiterate, the Secretary established that overtime compensation was probably due the eight "lessees" (employees), but he did not produce sufficient evidence to show the "amount and extent of that work" given the company's rebuttal of the Secretary's wage projections for the seventeen "lessees" (employees) who did testify. We therefore remand to the District Court with instructions to the court that it should conduct a further evidentiary hearing on the amount and extent of the work performed by these eight employees. *See Marshall v. Partida*, 613 F.2d 1360, 1362–63 (5th Cir. 1980).

Affirmed in part, reversed in part, and remanded.