MAYO, COMMISSIONER OF AGRICULTURE OF FLORIDA, ET AL. *v.* LAKELAND HIGHLANDS CANNING CO. ET AL.

No. 270. Argued January 12, 1940.—Decided February 26, 1940.

---

*Messrs. William C. Pierce* and *O. K. Reaves,* with whom *Messrs. George Couper Gibbs,* Attorney General of Florida, and *H. E. Carter,* Assistant Attorney General, were on the brief, for appellants.

*Mr. G. L. Reeves,* with whom *Mr. John B. Sutton* was on the brief, for appellees.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

The appellees, corporations of Florida and other States, and individuals, engaged in, the canning of citrus fruits in that State, filed their bill in the District Court for Southern Florida against Nathan Mayo, as Commissioner of Agriculture of Florida, praying injunctions, temporary and final, to restrain him from cancelling their licenses

312

as citrus fruit dealers, from enforcing against them a regulation made pursuant to a state statute, and from interfering with the conduct of their business by reason of their failure to comply with the statute.

On presentation of the bill and motion for temporary relief, the court issued a restraining order and convened a court of three judges. The Florida Citrus Commission was permitted to intervene as a defendant. After hearing on affidavits, filed by appellees and appellant Mayo, and, on evidence offered by the appellees, the court granted a temporary injunction pending final hearing.[1] The Commissioner and the intervenor have appealed.

The bill alleges the importance of the grapefruit canning industry in the State, and asserts that the appellees, in the conduct of their business, packed over sixty per cent. of the total grapefruit and grapefruit juice canned in the State in seasons prior to that of 1938–1939. It recites the adoption by the legislature of the Growers' Cost Guarantee Act (Chap. 16862 of the Acts of 1935) which, after declaring that the production and distribution of citrus fruit is a paramount industry of the State, upon which the prosperity of the State largely depends, and assigning reasons for the protection of the industry and the maintenance of prices commensurate with the cost of production of citrus fruit, authorizes the Commissioner of Agriculture, in his discretion, with the consent and advice of the Governor, to declare the existence of an emergency in the industry; and provides that, if he does so, then,—upon petition of owners or controllers of fifty per cent. or more of the producing acreage of citrus fruit, and, upon procurement by the Florida Citrus Commission from producers, shippers, or handlers, not subject to the provisions of the act, of binding agreements to conform thereto and abide by its terms,—the Commission shall

[1] 28 F. Supp. 44.

determine and record annually the average reasonable cost, per standard packed box, of producing citrus fruit. The statute provides that, thereupon, every contract with a grower for the purchase of fruit is to be held to require the purchaser to pay the grower a price per box equal to such ascertained and recorded cost; and continues: "Any contract, plan, scheme or device whereby it shall be attempted to preclude the grower from recovering such cost of production shall to that extent be held to be unlawful and against the public policy of this State, but in all other respects and particulars contracts of sale . . . shall be valid and binding and the terms thereof shall measure the rights of the respective parties." By its terms the act is to apply to any one or more of the varieties of citrus fruit.

The complaint further refers to the Bond and License Act (Chap. 16860, Laws of Florida, 1935, as amended by Chap. 17777, Acts of 1937), which requires every dealer (which term includes processors of citrus fruit) to take a license and provides that if the Commissioner determines that any dealer has violated the provisions of any applicable act he may suspend or revoke the license of the offender. Operation as a dealer without license is made a misdemeanor.

The bill alleges that the packing season for canning citrus products in Florida begins about November 1st of each year and continues until June or July of the following year; that preparations for canning include the ordering of cans, labels, contracting for purchase of fruit, securing labor, planning of factory operations, and obtaining orders for the product.

It is alleged that, under the Growers' Cost Guarantee Act, the appellant Mayo, as Commissioner of Agriculture, with the consent and advice of the Governor, declared an emergency in the citrus industry on January 13, 1939, and that the Citrus Commission passed a resolution Jan-

uary 16, 1939, reciting that more than fifty per cent. of the owners or controllers of producing acreage of grapefruit in the State have requested the Commission to determine the cost of production of grapefruit, fixing the cost per standard packed box at thirty-two cents for the season 1938–1939, and decreeing that every contract with a grower shall be held to require that the purchaser shall, in any event, pay the grower the amount so fixed as the cost of production.

The bill states that the expected pack of grapefruit for the season 1938-39 was large, but that, due to the regulation, the output of the canned product has been less, by two million cases, than that of the previous season; that, since January 19, 1939, each of appellees has been offered quantities of grapefruit by Florida growers, at prices ranging from twelve cents per box for fruit to be processed into juice, to twenty-five cents per box for fruit to be canned into sections or hearts, and that, but for the regulation in question, each could, and would, have purchased such fruit, canned the same, and sold the canned product at a large profit; that, as a result of the regulation, much of the fruit remains unsold and is spoiling.

The bill further asserts that many growers own their own canning plants and may, therefore, process their fruit without being subject to the burden of the Cost Guarantee Law; and that many growers, with like immunity, process their fruit through coöperative organizations to which the Commissioner does not apply the cost price provisions of the law and regulations.

According to the bill a large proportion of the Florida canned fruit is sold in interstate and foreign commerce and much of it competes with that produced in other States which brings lower prices, and, consequently, the appellees cannot pay thirty-two cents per box and sell in competition with fruit elsewhere processed.

It is further averred that one of the appellees had made binding contracts of purchase prior to issue of the regulation, the obligation of which has been impaired thereby.

After alleging that each appellee has a large investment; that the payment of thirty-two cents per box would render it impossible for them to sell their processed grapefruit except at a loss; that the enforcement of the regulation will cause them large losses and irreparable damage; that if they do not comply with the regulation the Commissioner will revoke their licenses, and that, if he should do so, they will be compelled to suspend business or subject themselves to risk of fine and imprisonment under the Bond and License Act, the bill charges that the Growers' Cost Guarantee Law, as administered and as applied to them, is unconstitutional and void as illegally attempting to regulate interstate commerce, as violating the equal protection clause of the Fourteenth Amendment, because discriminating between coöperatives and the complainants, as taking their property without due process of law, and as impairing the obligation of contracts. The bill also challenges the regulation on the ground that the Commission failed to ascertain, in accordance with the law, that fifty per cent. of the owners or controllers of acreage had requested regulation and also failed to observe the condition precedent to making any order, namely, that all persons not subject to the provisions of the act should execute binding agreements to be governed thereby.

At the time of hearing and decree for preliminary injunction no answer or motion to dismiss had been filed. The court in its opinion stated that the defendants had appeared and, though they had not filed answers, argued the case "and requested the Court to pass on all questions, presented, and especially on the constitutionality of the Act involved."

The court in its opinion, after a running commentary, concluded: "We find the Act unconstitutional." The court then went on to say that there was no proof before it that the Commission had procured agreements, as required by the act, from shippers or handlers not subject to the provisions of the act, and that, while this fact might not render the act violative of the Constitution, it required an injunction to restrain the Commission from enforcing the prices fixed. An injunction was issued to remain in force until final hearing.

We think the court committed serious error in thus dealing with the case upon motion for temporary injunction. The question before it was not whether the act was constitutional or unconstitutional; was not whether the Commission had complied with the requirements of the act, if valid, but was whether the showing made raised serious questions, under the federal Constitution and the state law, and disclosed that enforcement of the act, pending final hearing, would inflict irreparable damages upon the complainants.

The observations made in the course of the opinion are not, in any proper sense, findings of fact upon these vital issues. Statements of fact are mingled with arguments and inferences for which we find no sufficient basis either in the affidavits or the oral testimony.

It is of the highest importance to a proper review of the action of a court in granting or refusing a preliminary injunction that there should be fair compliance with Rule 52 (a) of the Rules of Civil Procedure.[2]

The appellants complain that the court's opinion decides a question which was not open on the hearing and

---

[2] Compare *Home Telephone & Teleg. Co.* v. *Kuykendall*, 265 U. S. 206; *Railroad Commission* v. *Maxcy,* 281 U. S. 82; *Public Service Comm'n* v. *Wisconsin Telephone Co.*, 289 U. S. 67; *Interstate Circuit* v. *United States,* 304 U. S. 55; *Borden's Farm Products Co.* v. *Baldwin,* 293 U. S. 194; *Polk Company* v. *Glover,* 305 U. S. 5.

prejudices their position on final hearing; that the decision goes beyond the question of a prima facie showing made for the purpose of obtaining a temporary injunction and proceeds upon assumptions of fact not sustained by the evidence which appellants could have negatived by proof adduced at final hearing. The appellees insist that in holding the act unconstitutional the court did so only for the purposes of temporary relief and that its conclusion in this respect can have no effect upon the ultimate decision of the cause upon the merits. Nevertheless, the parties have essayed, in view of the action of the court below, to argue in this court the question of the constitutionality of the statute, whereas, if the court below had confined itself to the issue presented, namely, whether the proofs warranted the entry of an injunction pending a decision of the constitutional and other questions presented, the parties could either have obtained a trial on the merits long before an appeal from the interlocutory order could be heard in this case or, if an appeal from the interlocutory order had been perfected here, would have been restricted in argument to the question whether, upon proper findings and conclusions, the court had abused its discretion in granting or refusing an injunction.[3]

Moreover, if appellants conceived themselves aggrieved by the action of the court upon motion for preliminary injunction, they were entitled to have explicit findings of fact upon which the conclusion of the court was based. Such findings are obviously necessary to the intelligent and orderly presentation and proper disposition of an appeal.

The appellants insist that the bill fails to state facts sufficient to raise a substantial question as to the constitutional validity of the statute. They could have made this point in the District Court by a motion to

---

[3] *United States* v. *Corrick*, 298 U. S. 435, 437.

dismiss and obtained a prompt decision on it. They omitted so to do.

The record does not warrant a judgment of dismissal. The complaint raises constitutional questions of due process, equal protection, and violation of the obligation of contract. It further raises questions as to whether the act has ever been put into operation in accordance with its terms.

The appellees' principal attack upon the statute, based upon the Constitution, centers on its regulation of prices. The mere fact that the act fixes prices is, in itself, insufficient to invalidate it;[4] and allegation of that fact does not raise substantial federal questions. The presumption that an act fixing prices is constitutional would require the denial of a temporary injunction, except in extraordinary situations. Findings to support a conclusion against constitutionality would need to be unequivocal.

Some of the complainants are corporations of States other than Florida, and allegations of the bill, which were not denied, sufficiently allege an amount in controversy in excess of $3,000 with respect to each complainant. In respect of the Commission's alleged failure to comply with the statute, it may be that these complainants are entitled to maintain the suit although not entitled to a hearing before a three judge court, even though it be found that there is no substance in the constitutional questions presented.

The legislation requiring the convening of a court of three judges in cases such as this was intended to insure that the enforcement of a challenged statute should not be suspended by injunction except upon a clear and persuasive showing of unconstitutionality and irreparable

---

[4] *Nebbia* v. *New York,* 291 U. S. 502; *United States* v. *Rock Royal Co-operative,* 307 U. S. 533, 569. Compare *Milk Control Board* v. *Eisenberg Farm Products,* 306 U. S. 346.

injury. Congress intended that, in this class of suits, prompt hearing and decision shall be afforded the parties so that the States shall be put to the least possible inconvenience in the administration of their laws.

Both the court below and the appellants are in part responsible for the inexcusable delay in the disposition of this case. We are advised that since the entry of the injunction the defendants have answered the bill, and there appears to be no reason why the case cannot promptly be finally heard and decided upon the merits. We reverse the decree and remand the cause to the court below with instructions that, if the motion for interlocutory injunction is pressed, the parties, if they desire it, may be afforded a further hearing, and any action taken by the court shall be upon findings of fact and conclusions founded upon the evidence, in accordance with Rule 52 (a) of the Rules of Civil Procedure.

*Reversed.*

MR. JUSTICE MURPHY took no part in the consideration or decision of this case.

Opinion of MR. JUSTICE FRANKFURTER.

A different disposition of the case seems to me to be required.

Citrus fruit occupies a central and indeed pervasive rôle in the economy of Florida. That state's well-being is dependent on the cultivation of the citrus crop, its packing, transportation, financing and exportation. The appropriateness of regulations to be adopted for the citrus fruit industry is thus peculiarly a matter for the legislature of Florida in whose keeping is the shaping of that state's social and economic policy. In *Nebbia* v. *New York,* 291 U. S. 502, this Court recognized price control as one of the means open to a state for the protection of its welfare. *United States* v. *Rock Royal Co-op.,* 307

U. S. 533. Cf. *West Coast Hotel Co.* v. *Parrish,* 300 U. S. 379. The allowable exercise of legislative discretion to attain price stability finds obvious occasion in the case of a commodity as basic to a state's economy as citrus fruit is to that of Florida. Certainly neither in the bill nor in the Court's opinion is a reason vouchsafed to take the present suit out of the scope of the *Nebbia* doctrine. The wisdom of such a policy—its efficacy to achieve the desired ends—is of course not our concern.

The price level here challenged was not hastily or crudely fixed. It was the result of an approved modern method for dealing with the complexities of such a problem. The price was not fixed directly by statute. It was ascertained under appropriate safeguards by a body established to carry into apt result the legislative policy for assuring "the grower returns at least equal to the cost of production. . . ." Laws of Florida, 1935, c. 16862. The Florida Citrus Commission on January 16, 1939, fixed minimum prices for grapefruit, thereby establishing what is colloquially known as a "floor" for the market, so as to prevent the destructive play of blind economic forces.

This action was thereupon commenced in the District Court for the Southern District of Florida, not by any of the growers but by some canners, appellees here. On March 23, 1939, they sought to enjoin the Commissioner of Agriculture and other state officials from enforcing the fixed minimum prices. They claimed that these deprived them of the opportunity to buy in a cheaper market—the cheapness of competition indifferent to any but immediate consequences. They claimed irreparable damage and asked for both a temporary and a permanent injunction. On April 28, 1939, in the circumstances set forth in this Court's opinion, the District Court declared the statute unconstitutional and granted an interlocutory injunction. There were no findings—and there

could have been none on this record—taking the statute out of the doctrine announced in the *Nebbia* case.[1] Certainly a consumer has no constitutional right to buy as cheaply as an unregulated industry would, under adverse circumstances, be compelled to sell.

Pursuant to the delays inevitable in a litigation like the present, an order allowing appeal was not granted until July 3, and the case was filed here on August 7, where in due course it was reached for argument on January 12, 1940. As a result, the injunction effectively suspended the operation of the Florida law during the whole marketing season, although this Court now finds that the injunction should never have been granted.

I do not believe we should now let this bill hang over next year's crop. We ought not to encourage the use of the judicial process for such unjustifiable attempts to set aside a state law by allowing them to be successful in result even though legally erroneous. We ought to apply what was characterized in *Massachusetts State Grange* v. *Benton*, 272 U. S. 525, 527, as "the important rule, which we desire to emphasize, that no injunction ought to issue against officers of a State clothed with authority to enforce the law in question, unless in a case reasonably free from doubt and when necessary to prevent great and irreparable injury." Even if the present

[1] Appellees also attacked the Florida statute because of its provisions exempting co-operative and grower-owned canneries. This attack, however, must fail under our decision in *United States* v. *Rock Royal Co-op.*, 307 U. S. 533. Appellees' contention that the statute is an unconstitutional burden on interstate commerce is likewise without substance. *Sligh* v. *Kirkwood*, 237 U. S. 52; *Milk Board* v. *Eisenberg, Co.*, 306 U. S. 346. Nor is there substantial basis for appellees' contention that the order unconstitutionally impairs the obligation of any contracts they may have previously made for the purchase of grapefruit at a price lower than that fixed under the statute. See, *e. g.*, *Union Dry Goods Co.* v. *Georgia Public Service Corp.*, 248 U. S. 372. Cf. *Knox* v. *Lee*, 12 Wall. 457, 550–51.

bill is taken at face value, it does not make out "a case reasonably free from doubt." The withdrawal of the injunction from industrial controversies made by the Norris-LaGuardia Act was in no small part due to the belief by Congress that experience had shown that the use of a legal remedy devised for a simple situation might in a totally different environment become a perversion of that remedy. Congress has also given indication in § 266 of the Judicial Code (28 U. S. C. § 380) of its concern over the misuse of the injunction, fashioned for settling an ordinary clash of private interests, to restrain the machinery of a state in carrying out some vital state policy.

The supervisory power of this Court over the district courts becomes especially appropriate in equity suits. We ought to feel free to apply the traditional powers of the chancellor on appeal to act as though the suit were before him *de novo.* Compare *United States* v. *Rio Grande Irrigation Co.,* 184 U. S. 416, 423. The present case demands that we enforce the "important rule" of *Massachusetts State Grange* v. *Benton, supra.*

Inasmuch as the Florida statute is obviously constitutional, the bill does not raise a substantial federal question and the District Court was without jurisdiction to entertain it on behalf of the appellees who are citizens of Florida. As to them, the case should be remanded to the District Court with directions to dismiss the bill.

Some of the appellees, however, are citizens of other states, and among the allegations of the bill, in addition to the amount of damage requisite to give diversity jurisdiction, are those of failure by the state officials to comply with some of the conditions which appellees assert to be indispensable for the issuance of a valid price-fixing order under the statute. Whatever may be the merits of these contentions, in any event they do not touch the constitutionality of the statute or the order,

and so § 266 of the Judicial Code cannot be invoked for their adjudication. As to these appellees, the judgment below should be vacated and the case remanded to the District Court for any proceedings that may be appropriate before a single judge. But compare *Gilchrist* v. *Interborough Co.*, 279 U. S. 159.

MR. JUSTICE BLACK and MR. JUSTICE DOUGLAS join in these views.