**Frank S. SHELTON, Plaintiff,**

v.

**Hugh WADE, as Treasurer of the Territory of Alaska, Defendant.**

**No. 3547–KA.**

District Court, Alaska
First Division, Juneau.
April 28, 1955.

C. L. Cloudy (of Ziegler, Ziegler & Cloudy), Ketchikan, Alaska, for plaintiff.

Henry J. Camarot, Asst. Atty. Gen., and Dickerson Regan, Unemployment Compensation Commission, Juneau, Alaska, for defendant.

FOLTA, District Judge.

Pending hearing on the merits, plaintiff seeks to enjoin the defendant from transferring money from the General Fund of the Territory to the Unemployment Compensation Fund, pursuant to a loan of $2,000,000 made under the authority of Ch. 8, E.S.L.A.1955, to the Employment Security Commission. The complaint alleges that further transfers and loans will be made from the General Fund and that since the Unemployment Compensation Fund is insolvent the funds so transferred or lent will be irretrievably lost to the General Fund, thereby increasing the tax burden of plaintiff and other taxpayers. The grounds upon which injunctive relief is sought are that (a) the Legislature was not lawfully convened at the time of the passage of Ch. 8 because 15 days' notice had not been given; (b) the Employment Security Commission was not validly constituted at the time the loan of $2,000,000 was applied for; (c) Ch. 8 is in contravention of Sec. 9 of the Organic Act, 48 U.S.C.A. § 77, prohibiting the Legislature from assuming any indebtedness, and (d) the transfer of funds from the General Fund is prohibited by Sec. 7–1–6(d) of the Code.

It was stipulated at the hearing that on or about April 9, 1955, the Employment Security Commission directed its executive director to apply for a loan of $2,000,000 from the General Fund; that $1,000,000 was advanced, of which $925,000 has been spent; that the Unemployment Compensation Fund is depleted and that contributions thereto are insufficient to replenish it; that the Governor did not give 15 days' notice of the extraordinary session at which the Employment Security and the loan Acts were enacted; that when the Commission applied for the loan only four members had qualified but that the vote for the loan was unanimous; that there is no statutory provision authorizing the payment or diversion of any funds out of the General Fund for the purpose stated; and that the loan authorized by Ch. 8 represents between 10% and 15% of the total estimated revenues for the fiscal year 1955–56 and more than 25% of the General Fund at the present time.

■ The contention of the Territory that this is a suit against the sovereign, consent to bring which has not been given, is untenable where, as here, the invalidity of a statute or official act is asserted, Larson v. Domestic and Foreign Corp., 337 U.S. 682, 690, 69 S.Ct. 1457, 93 L.Ed. 1628, rehearing denied 338 U. S. 840, 70 S.Ct. 31, 94 L.Ed. 514.

■ The questions raised as to the validity of the official acts complained of and of the statutes involved are sufficiently grave to bring the case within the ambit of Mayo v. Lakeland Highlands Canning Co., 309 U.S. 310, 316, 60 S.Ct. 517, 84 L.Ed. 774, and entitle the plaintiff to interlocutory relief unless some essential to the maintenance of such a suit is lacking. But while the court reserves questions of law and of fact for determination at the hearing on the merits, the plaintiff seeking injunctive relief must also show preliminarily that

he has no adequate remedy at law, that the damages will be irreparable in a legal sense, and that he has standing to sue. There is a sufficient showing as to every essential except as to plaintiff's right to bring this suit. The interest which must be shown as a prerequisite to the maintenance of a suit by a taxpayer for injunctive relief is a matter upon which the authorities are divided, Annotation 58 A.L.R. 588. The weight of authority is that the unlawful diversion of funds by a municipality or state may be enjoined by a taxpayer. However, a minority of the courts supports the view that states should be allowed great latitude in making appropriations and that they may be restrained by a taxpayer only where he is able to show that he will suffer a direct injury. So far as federal funds are concerned, the question was laid at rest by the Supreme Court in Commonwealth of Massachusetts v. Mellon [Frothingham v. Mellon] 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078, in which it was declared that the doctrine of the separation of powers precluded an examination into the constitutionality of a statute except where the complaining taxpayer suffers, or is threatened with, a direct injury. In Griffin v. Sheldon, D.C., 78 F.Supp. 466, Judge Dimond adopted the majority view and, although much could be said in favor of the proposition that every state and territory should be allowed to formulate its own policy, particularly in view of the remote relationship borne by the taxpayer to the federal government as compared with the much closer relationship borne to local government, Judge Dimond's decision was reversed, Sheldon v. Griffin, 9 Cir., 174 F.2d 382, on the authority of Commonwealth of Massachusetts v. Mellon, supra. Since the plaintiff has not shown that he will suffer any injury that will not be suffered in common by the general public, he has no standing to sue, and hence the decision of the Court of Appeals for this Circuit is dispositive of this controversy and requires that the motion for a preliminary injunction be dismissed and the restraining order dissolved.