**METALOCK REPAIR SERVICE, Inc., and Lois R. Morrison, Appellants,**

v.

**Hal W. HARMAN, Appellee.**

**No. 13313.**

United States Court of Appeals
Sixth Circuit.

July 28, 1958.

---

John J. Mahoney, Columbus, Ohio, Corbett, Mahoney, Miller & Rambo, Columbus, Ohio, on the brief, for appellants.

Warren H. F. Schmieding, Columbus, Ohio, Schmieding & Fultz, Columbus, Ohio, on the brief, for appellee.

Before SIMONS, Chief Judge, and ALLEN and McALLISTER, Circuit Judges.

ALLEN, Circuit Judge.

This is an appeal from an order of the District Court of the Southern District of Ohio overruling a motion to dissolve a preliminary injunction theretofore issued against defendants.[1] The principal question is whether the District Court has jurisdiction of the matter.

In 1944 plaintiff sued Lawrence B. Scott for patent infringement in the Southern District of Ohio. The District Court entered an interlocutory order holding the patent valid and infringed and ordering an accounting. A permanent injunction was issued against Scott and his agents (Harman v. Scott, D.C., 90 F.Supp. 486) forbidding further infringement. This court affirmed the judgment of the District Court (195 F.2d 916), certiorari denied 343 U.S. 965, 72 S.Ct. 1059, 96 L.Ed. 1362.

The background of the case is as follows: In 1939 defendant Scott established the Metalock Casting Repair Service in Columbus, Ohio. Defendant Lois Morrison, who had been employed by Scott in Texas, and is now married to Scott, was employed in the Columbus business and now is an officer of a New York concern, Metalock Repair Service, Inc., (hereinafter called Metalock), successor to the Columbus concern.

On December 8, 1952, in accordance with the order of the District Court, a Master ordered Scott to appear and give evidence for an accounting. On February 13, 1953, the Master certified that Scott had not complied with the terms of the order of December 8, 1952, "in any respect" and adjudged Scott in contempt for not appearing or presenting books of account or statements as ordered. No further proceedings have been taken in the accounting.

The order of the District Court in the patent case enjoined the defendant Scott, his agents, servants, employees and attorneys and those acting in concert or cooperation with them, from continuing the infringement found by the District Court to exist. On January 26, 1955, plaintiff filed a motion for preliminary injunction against Scott, Metalock and Morrison, and on February 3, 1955, filed a motion for substituted service of process on defendants Metalock and Morrison. The two latter defendants opposed these motions. June 10, 1955, the motion for substituted service of process was sustained, and the preliminary injunction was granted as prayed for, enjoining defendants Scott, Metalock and Morrison from "selling, assigning, mortgaging or otherwise encumbering, or otherwise transferring, or from sequestering any of his, her, theirs or its assets in whatever form * * *."

A supplemental complaint was filed in the patent case on June 17, 1955, by leave of court joining Scott, Metalock, and Morrison as parties defendant. The supplemental complaint alleged that after the patent suit was instituted, but prior to the trial thereof, Scott, without notice to the court, moved the business from Columbus, Ohio, to Long Island City, N. Y., transferring all of his holdings in the Columbus business to the Long Is-

1. The parties will be denominated as in the trial court.

land concern, which in 1946 was incorporated in New York State under the name of Metalock Repair Service, Inc. The complaint also averred that the infringement enjoined by the District Court was being continued by defendants in Columbus, Ohio, in violation of the injunction. The District Court overruled a motion to dismiss the supplemental complaint. An appeal was filed to the overruling of this motion, which in turn was dismissed by the Court of Appeals [6 Cir., 216 F.2d 611] on the ground that the order was not final and not appealable. The merits of the case were not considered.

A motion praying for dissolution of the preliminary injunction was overruled June 3, 1957, and from this order the instant appeal is prosecuted by Metalock and Morrison.

Defendants Metalock and Morrison in their various motions appeared "specially and not generally". They contend that the District Court has no jurisdiction to issue the preliminary injunction. Their principal contention as to jurisdiction of the person is that defendants have not been served with process. It is undisputed that both defendants Morrison and Metalock are residents of New York State. They contend that they have committed no act of infringement in Ohio and that they have no regular business within the State of Ohio. It is undisputed that neither of these defendants has qualified to do business in Ohio and no person is authorized to act as agent for receiving process in Ohio. The District Court appointed John J. Mahoney of Columbus, Ohio, attorney for Scott and the other defendants, as agent to receive service for defendants and it is asserted that Mahoney is not authorized to accept process in their behalf.

Defendants urge that under Rule 4(f) of the Federal Rules of Civil Procedure, 28 U.S.C.A. the issuance of an order for substituted service was plainly not authorized beyond the territorial limits of the State. They urge that substituted service is authorized only when a statute of the United States provides that service may be made beyond the limits of the State, citing, among other authorities, Barron & Holtzoff, Federal Practice and Procedure, Vol. 1, page 335. In patent cases they point out no such special statute exists.

Plaintiff maintains that as to jurisdiction of the person, Metalock paid expenses in the patent case, thus making a general appearance, [see Ocean Accident & Guarantee Corporation, Limited, v. Felgemaker, 6 Cir., 143 F.2d 950], and waiving all question of personal jurisdiction. Due to Morrison's ownership of "most of the stock" of Metalock, plaintiff claims that general appearance by Metalock, in light of the circumstances set forth in the record, constitutes general appearance by Morrison.

As to jurisdiction of the subject matter, defendants Metalock and Morrison urge that the supplemental complaint brings in new parties and new matter charged as basis of relief and that the action therein set up must be brought in the district in which defendants have committed acts of infringement, if any, and have a regular and established place of business.

Plaintiff answers by asserting that the supplemental complaint is ancillary only, that the parties in legal contemplation are identical with Scott, that the complaint seeks no new relief, endeavors only to maintain the status quo, and to enforce the interlocutory injunction already granted by the District Court. It urges that the uncontradicted facts establish fraud and collusion between Scott, Metalock and Morrison. Scott testified that he and Morrison were partners in the Columbus business. Scott was president of Metalock from its inception until February, 1953, and Morrison was at its inception, and still is, secretary-treasurer of Metalock. In 1948 Morrison acquired from Metalock a house and "most of the stock". Plaintiff alleges that Morrison fraudulently acquired this property.

The sale of the assets of the Columbus business was made by Scott to Metalock

in 1947, during the pendency of the patent suit, the trial of which was held in 1948, and interlocutory judgment rendered in 1950. Plaintiff asserts that Metalock and Morrison conspired with Scott to defraud plaintiff of an enforceable judgment and that Morrison is to be considered in equity as the corporation itself. In effect it claims that Metalock and Morrison are so identified in interest and in privity with Scott that they may not nullify the interlocutory judgment of the District Court as to validity and infringement by Scott of the Harman patent by performing the acts prohibited by the District Court.

In the instant proceedings the District Court ruled on all motions in favor of plaintiff and granted the preliminary injunction. Plaintiff says that this action was taken because the District Court agreed with plaintiff's view of the facts and of the law. It states in its brief that the court found that "the relationship between Morrison and Scott was a proprietorship wherein at least Morrison derived profits, and apparently all of the profits." Plaintiff also states in the brief that "As found by the District Court, the instant case falls squarely within the doctrine * * * in Felgemaker v. Ocean Accident & Guarantee Corporation, Ltd., D.C., 47 F.Supp. 660, 662," which part of the decision was affirmed in Ocean Accident & Guarantee Corporation, Limited v. Felgemaker, supra, 6 Cir., 143 F.2d 950.

The trouble with this contention is that the court in granting the preliminary injunction made no findings of fact and conclusions of law as required under Rule 52(a) of the Federal Rules of Civil Procedure.

■ The lack of these findings makes it difficult, if not impossible, for the court to rule upon the law as well as upon the facts. As to the claimed general appearance of Metalock in the case, plaintiff contends that Metalock paid the expenses of the trial on the merits and of the proceedings in this court, and certiorari proceedings in the Supreme Court. Scott expressly admitted that Metalock paid all expenses on appeal, but did not state that Metalock paid the expenses of the trial on the merits. However, Scott's income tax return for 1947 showed that he deducted $1,422.04 for legal expenses. He testified that in 1948, 1949, 1950 and 1951 he personally had no legal expenses. The patent case was tried in the middle of 1948 for a number of days. It would appear that heavy legal expenses must have been incurred in 1948 as a lawyer brought from Texas to Ohio conducted much of the examination on behalf of Scott. It was a question of fact whether such expenses which were not paid by Scott were paid by Metalock or Morrison, but no finding was made on this point.

The court also made no finding as to whether Metalock or Morrison had an interest in the outcome of the patent litigation or whether either of them exercised any control over the proceedings during the pendency thereof. If Metalock paid part of the expenses of the trial in 1948, this would have bearing upon the question of control.

■ Whether the Columbus concern was, as Scott said, a partnership between himself and Morrison is a material issue of fact. Whether or not Morrison was a partner had bearing upon the existence between her, Scott and Metalock of collusion and fraud. Whether Morrison was identified with Scott in the patent litigation in interest and in privity and colluded with Scott and Metalock to dispose of the assets of the Columbus business so that they could not be reached in the accounting which Scott has so far defeated, was a material issue of fact. Where a corporation is formed by the members of a partnership with the intent of defrauding partnership creditors, if a "mere transformation" is made with the parties remaining the same, no real change has taken place and the creditors look to the same persons for satisfaction. Andres v. Morgan, 62 Ohio St. 236, 245, 56 N.E. 875, 877. The existence of the partnership was not admitted. Scott testified before the Master that he and Morrison had an agreement to share the profits 50-50 and that he and Morrison con-

sidered themselves partners. Morrison did not testify, but filed various affidavits. She claimed that Scott had no control of the business or of Metalock after 1948, that she was not and never has been in a partnership business or venture or in joint venture with Scott, nor jointly owned or shared in the profits of any business engaged in by Scott.

Defendants rely upon the agreement between Scott and Metalock executed October 1, 1947, as establishing non-liability of Metalock for the patent infringement found to have existed by the Ohio District Court after trial in 1948. It is said that the recital of liabilities which were assumed in this contract by Metalock, when considered in connection with the reservation by Scott of his various patents, trademarks and copyrights used in connection with the Columbus business, shows that Metalock assumed no liability for infringement. But if the corporation was formed as the result of a conspiracy between Scott and Morrison for the purpose of evading Scott's liability theretofore determined by the District Court, this contract might be considered by the court to constitute part of the fraudulent transaction.

It is uncontradicted that in 1947 Scott received 30 shares of stock in Metalock as consideration for the transfer of assets valued at approximately $91,000. It does not appear in the meager record presented in this court how many corporate shares were issued. Scott declared that Morrison got "most of the stock". In 1952 Scott declared to his attorney that he had no stocks or bonds, no funds in the bank, no safety deposit box, no automobile, and had one piece of real property which was then being sold to satisfy a tax lien. In other words, in 1952 he claims to have practically no assets, although in 1947 the 30 shares of stock which he received were estimated to be worth more than $91,000. Morrison does not deny that she has taken over "most of the stock", of Metalock. Such stock-ownership presumably confers substantial control of an establish-

ment which in 1948, as Scott testified under oath, employed some 35 employees, was housed in a building estimated by Scott as worth $250,000, and had licensees throughout the United States, as well as one licensee in England for Europe and one in Norway.

In addition to the lack of findings of fact, the court made no conclusions of law. It did not decide whether a general appearance was made by Metalock within the rule of the Ocean Accident & Guarantee case, supra. It did not decide whether, in view of the relationship of the parties and the acts done by them, the complaint is ancillary. The complete lack of findings places this court at a great disadvantage in endeavoring to make a just and proper disposition of the case.

Here the legal questions, such as the existence or nonexistence of a general appearance by Metalock and Morrison in the patent hearing and whether the supplemental complaint is ancillary or a new and independent pleading, are dependent upon the facts. A prima facie case of fraud and collusion was established by evidence. The transfer of the property of the Columbus concern during the pendency of the suit; the fact that Scott admitted that there was a partnership in Columbus between him and Morrison; that in 1952 Morrison owned "most of the stock" of Metalock because "she had it coming to her"; her marriage to Scott; Scott's statement to his counsel that Scott in 1952 was largely stripped of assets; these circumstances cannot be ignored, but not all of them are undisputed.

Morrison specifically denies that Scott has been the owner of any of the stocks, bonds, "or other elements of title" in Metalock since September 6, 1948. This denial is stressed as showing that Scott in good faith states that he owns no stocks or bonds. However, these statements, if assumed to be true, may indicate control of the litigation by Metalock and Morrison and thus may affect the issue as to whether Metalock or Morrison made a general appearance. If Scott in

1948 did not own his patents which were involved in the original action it is a fair inference that they were then owned by Metalock or Morrison. The booklet which listed the 35 licensees described by Scott under oath in the trial was entitled "Metalock" and stated that it was published by Metalock Casting Repair Service, Inc., Long Island City, N. Y. It might reasonably be inferred that Metalock would hardly be licensing agents and customers throughout the United States and even in Europe unless it owned the patents covering its operations. If Metalock owned or had an interest in the Scott patents when it paid the expenses in the period from trial to the certiorari proceedings in the Supreme Court, 1948 to 1952, it is a reasonable inference that it exercised some control over the litigation, or at least had the right to exercise such control. But there is no finding of the District Court as to the ownership of the patents, control or the existence of a joint interest in the controversy between these parties.

The existence of the partnership is denied by Morrison, but only in her affidavit. She has never taken the stand. Scott's repeated failure to appear before the Master and bring intelligible records for an accounting as ordered strengthens the prima facie case of collusion. If these inferences were entirely undisputed, we might substitute the undisputed facts for the necessary findings. Yanish v. Barber, 9 Cir., 232 F.2d 939, 947. But here there are no findings and there is no hint in the trial court of its ultimate conclusions of fact and law. The United States Supreme Court dealing with a similar problem remanded the case for appropriate findings. Hatahley v. United States, 351 U.S. 173, 182, 76 S.Ct. 745, 100 L.Ed. 1065. The same procedure is followed in the Circuit Court. Fletcher v. Fletcher, 95 U.S.App.D.C. 86, 219 F.2d 768.

It is a long-established rule that compliance with such rules of procedure as 52(a) is required. In Public Service Commission of Wisconsin v. Wisconsin Telephone Company, 289 U.S. 67, 69, 53 S.Ct. 514, 515, 77 L.Ed. 1036, Chief Justice Hughes declared "We have repeatedly emphasized the importance of a statement of the grounds of decision, both as to facts and law, as an aid to litigants and to this court." On page 71 of this decision [289 U.S. on page 515 of 53 S.Ct.], the court declared "we are not called upon, unaided by opinion or findings, to search this voluminous record to find a basis for the court's decree." The court in that case extended the requirements of the equity rules to embrace decisions upon interlocutory applications. In Railroad Commission of Wisconsin v. Maxcy, 281 U.S. 82, 83, 50 S.Ct. 228, 74 L.Ed. 717, the court declared "this Court should have the aid of appropriate findings by the District Court of the facts which underlie its conclusions" and the case was remanded to the District Court to state such findings. In Mayo v. Lakeland Highlands Canning Company, 309 U.S. 310, 316, 60 S.Ct. 517, 520, 84 L.Ed. 774, the Supreme Court held "It is of the highest importance to a proper review of the action of a court in granting or refusing a preliminary injunction that there should be fair compliance with Rule 52(a) of the Rules of Civil Procedure." And at page 317 of the Mayo case, supra [at page 520 of 60 S.Ct.], the Court states "they [appellants] were entitled to have explicit findings of fact upon which the conclusion of the court was based." Cf. Virginian Ry. Co. v. United States, 272 U.S. 658, 674, 675, 47 S.Ct. 222, 229, 71 L.Ed. 463. The Supreme Court there, after commenting on the fact that lack of an opinion may deprive litigants of the means of exercising a sound judgment on the propriety of an appeal, continues, "And the appellate court, being without knowledge of the grounds of the decision below, is denied an important aid in the consideration of the case, and will ordinarily be subjected to much unnecessary labor."

This court under the instant record cannot supply the necessary findings and conclusions which should have been made below. Cf. Kelley v. Everglades Drainage District, 319 U.S. 415, 63 S.Ct. 1141, 87

**816**

L.Ed. 1485; Paramount Pest Control Service v. Brewer, 9 Cir., 177 F.2d 564.

The order appealed from is set aside and the cause is remanded to the District Court to state its findings of fact and conclusions of law and enter a decree thereon, the restraining order entered in this suit to be continued pending further action by the District Court.