301 F.2d 59
 OSAKA SHOSEN KAISHA, LTD., Libelant and Claimant of THE
Motor Vessel ATLAS MARU, Appellant and Cross-Appellee,
v.
ANGELOS, LEITCH & CO., LTD., Cross-Libelant and Claimant of
THE Motor Vessel ELENE, Appellee and Cross-Appellant.
 No. 8420.
 United States Court of Appeals Fourth Circuit.
 Argued Nov. 9, 1961.
Decided March 19, 1962.
 
 Robert H. Williams, Jr., Baltimore, Md., for appellee and cross-appellant.
 John F. Gerity, New York City (Southgate L. Morison, Baltimore, Md., Don Borg, New York City, Ober, Williams, Grimes & Stinson, Baltimore, Md. and Kirlin, Campbell & Keating, New York City, on brief), for appellant and cross-appellee.
 Before SOBELOFF, Chief Judge, and BOREMAN and BRYAN, Circuit Judges.
 ALBERT V. BRYAN, Circuit Judge.
 
 
 1
 In the harbor at Baltimore, Maryland on the night of September 29, 1956 the Japanese Motor Vessel Atlas Maru and the Greek Motor Vessel Elene collided. Inbound, Atlas was proceeding up the Fort McHenry Channel-- almost due north-- with all running lights burning and barely enough speed to maintain steerage-way. Just before the collision, Elene lay within Deep Water Anchorage No. 3, which is on the east side of the channel. Showing only her anchor lights, Elene rammed the starboard bow of Atlas. The District Judge sustanied Attlas' accusation, and we agree: Elene moved out of anchorage into the channel, ploughing into Atlas as she passed. Atlas, however, he found also at fault as not maintaining adequate lookout. In this he erred.
 
 
 2
 The channel at the point of collision is approximately 600 feet wide. The anchorage-- 33 to 34 feet deep-- fronts on the channel for about three quarters of a mile north and south, extending east in width one quarter mile. Its southwest corner-- on the channel-- is marked by red-lighted Buoy 12-M. The weather was fair, the wind light in the southwest, the tide of no consequence.
 
 
 3
 Atlas Maru was 473 feet in length, Elene 464 with a draft of 29 feet. Elene had been seen along with other vessels in the anchorage when Atlas was still about 4000 feet down channel with Fort Carroll on her starboard beam. This was at 2123. (Eastern Standard is the time of all references). Elene had been there continuously since 2021 displaying the lights required to represent her at rest and at anchor. Her bow to the channel between 225 and 600 feet in from the channel edge, she rode mid-anchorage (north and south) at the end of 180 feet of anchor chain. Atlas, a State pilot at the helm, was making up-channel at no more than three knots, delaying until a berth in Baltimore was made ready. When at 2142 she passed Buoy 12-M, Atlas' engines had been stopped for six minutes. The tug Gannet met her above Buoy 12-M, came around under her stern, and made fast to her starboard bow to take her to dock. Atlas was 100 feet from the anchorage edge, her engines 'dead slow'. Elene was still stationary. It was 2149.
 
 
 4
 The tugmaster boarded Atlas, Leaving the tug manned by the mate and a dockhand. At 2150 the hand noticed Elene moving into the channel-- contrary to her anchor lights-- 250 to 450 feet off Atlas' starboard bow. He at once called out to the mate who in turn blew danger signals and cast Gannet off from Atlas' bow. Simultaneously with the tug's blasts Atlas' pilot observed Elene's motion and took action. Atlas responded readily, going bow to port away from Elene, and then-- on orders of her master-- put engines full astern.
 
 
 5
 Her speed variously estimated as 'between 1 and 2 knots', 'about 3 knots' and 'fast', Elene moved into the channel. Her anchor chain stretched aft tautly from her bow and a wake astern was to be seen. She crushed into Atlas' starboard bow where the tug a moment before had made fast, and rasped along her side. The time was 2151.
 
 
 6
 After the collision Elene fouled the channel for 150 feet beyond the anchorage. The ships soon parted, Atlas going on to her pier, and Elene being returned to the anchorage by another tug. The action of Elene has not been explained. None of her officers was on the bridge and apparently she was in no wise readied to move out. In fact, she contends she could not leave the anchorage because her port engine was dismantled for repairs in progress at the time of collision, and her starboard engine, cold, would not run without an hour's warming. Auxiliary gear was available to turn over the port propeller when necessary to the work. The cause of her movement, however, is not important since the evidence establishes that she was in the channel.
 
 
 7
 These are the facts quite properly found by the District Judge. The version of Elene that Atlas invaded the anchorage and dragged her into the channel was not acceptable to the District Judge, nor is it to us. But his further findings do not warrant conviction of Atlas of negligence.
 
 
 8
 The fault laid to Atlas Maru is that she did not have a proper lookout. 33 U.S.C.A. 221. But found facts reveal, we think, adequate lookout on the part of Atlas. On her bridge as she crept up the channel were the State pilot conning the ship, the wheelsman, the Captain, Second, Third and Fourth Officers, an apprentice pilot and a standby quartermaster-- eight in all. On the forecastle were the First Officer, boatswain, carpenter, and at least two seamen. She was proceeding at speed scarcely greater than a pedestrian's brisk walk. It would be unfair and merely speculative to presume that the men on the bridge together with the five on the forecastle were not alert for the safe advance of their vessel. That was their intent and nothing else. The tug was no distraction. Her tyingin in to Atlas was without incident.
 
 
 9
 Moreover, beyond dispute the navigating officers of Atlas held Elene in eye constantly from the time Atlas was at Fort Carroll, some half hour before collision. All that was fairly observable, they observed. A crewman solely devoted to lookout could not have accomplished more. Neither deck officers nor crew could anticipate irresponsible straying by Elene. Nothing foreshadowed her threat. Even reacting immediately, the tug had barely enough time or space to clear. Atlas surely had no opportunity to escape the jaws of the impending disaster born of Elene's wantonness. Even if a specially assigned lookout was obligatory, the evidence is 'clear and convincing', we think, that his absence was not a contributing cause of the collision. Anthony v. International Paper Co., 289 F.2d 574 (4th Cir. 1961). That there was diligence of lookout is confirmed by the State pilot's detection of the menace of Elene at almost the same time as that of the tug deckhand, who was even nearer to her and in more imminent peril. '* * * The question of the sufficiency of the lookout in any instance is one of fact to be realistically resolved under the attendant circumstances, bearing in mind that the performance of lookout duty is an inexorable requirement of prudent navigation'. Judge Soper in Anthony v. International Paper Co., supra 289 F.2d at 580.
 
 
 10
 There is a seeming conflict, it is true, between the opinion and formal findings of the District Judge relating to the time available to Atlas for avoidance. This apparent inconsistency arises in respect to the moment when Elene began to roam. The opinion states that she 'moved about 450 feet to the east line of the channel and 110 feet into the channel before the collision, at a speed which never exceeded one knot' and therefore 'she must have been in motion for at least seven minutes.' The findings he filed with the opinion state: 'no evidence Elene was moving near channel 5 minutes (2146) before collision' and 'Tug Gannet tied up along starboard bow of Atlas Maru at * * * (2149) and Elene was not moving'. In our judgment the statement in the opinion of the Court is mere 'reasoning' and 'observation', 'fact mingled with arguments and inferences' by the District Judge, rather than strict findings. Cf. Mayo v. Lakeland Highlands Canning Co., 309 U.S. 310, 316, 60 S.Ct. 517, 84 L.Ed. 774 (1940); Interstate Circuit, Inc. v. United States, 304 U.S. 55, 56 58 S.Ct. 768, 82 L.Ed. 1146 (1938). We accept his findings as controlling.
 
 
 11
 This is proper, too, because formal findings are held at law to prevail over an opinion even though Rule 52, F.R.Civ.P., 28 U.S.C.A., contrary to the original practice, permits an opinion to serve as special findings. Plastino v. Mills, 236 F.2d 32, 35 (9 Cir. 1956). The Supreme Court Admiralty Rules do not include a like proviso, although recent court decisions have tolerated the substitution of an opinion for findings. United States v. Ladd, 193 F.2d 929, 930 (4 Cir. 1952). The District Judge obviously was adhering precisely and rigidly to the correct admiralty procedure. He intended his findings to govern-- the opinion to defer to them. Otherwise he had no reason to make and state findings aside from his opinion.
 
 
 12
 The result is to find Elene not moving at 2149. The crash occurred between 2150 and 2151. Therefore, Atlas had only a minute for evasive maneuver. The action taken as Elene bore down upon her is not condemned. The seamanship is unquestioned, albeit unsuccessful because tardy. But it was not too late because of Atlas' want of whtchfulness or lack of vigilance. Collision course was forced upon her. Elene attempts to implicate Atlas through attributing fault to her, i.e. failure to avoid the ramming. But, as Elene's negligence was wantonly gross, she had the burden to prove Atlas particeps. However, she does not "more than suggest the possibility". Bradshaw v. The Virginia, 176 F.2d 526, 530 (4 Cir., 1949). There this court in circumstances not unlike the instant facts said through Judge Dobie,
 
 
 13
 'It has long been the rule that where one vessel, in violation of statute, is as grossly at fault as was the Greenwell here, that Vessel will be held solely at fault unless the evidence to establish the fault of the other vessel is clear and indisputable. Cf. The Pennsylvania, 19 Wall. 125, 86 U.S. 125, 22 L.Ed. 148; Taylor v. Harwood, 23 Fed.Cas. (p. 773) No. 13,794.'
 
 
 14
 The evidence is not that persuasive here.
 
 
 15
 The decree of the District Court is affirmed in its judgment against the M/V Elene, but reversed in imposing liability upon the M/V Atlas Maru.
 
 
 16
 Affirmed in part and reversed in part.