815 F.2d 888
 Herbert BADGLEY, James Barnes, Mitchell Chapman, Robert
Gunsberg, (a/k/a Robert Alvino), Maurice McCorkle, Frank
Ricchiuti, Oscar Rodriguez and Henry Smith, inmates of the
Nassau County Correctional Center and Eugene Chapman, Lee
McCorkle and Katherine Ricchiuti, members of inmates'
families, individually and on behalf of all persons
similarly situated, Plaintiffs-Appellants,
v.
Joseph J. SANTACROCE, Sheriff of Nassau County, Walter J.
Flood, Warden of Nassau County Correctional Center,
individually and in their official capacities; and the
County of Nassau, Defendants-Appellees.
 No. 1156, Docket 87-2117.
 United States Court of Appeals,
Second Circuit.
 Argued April 9, 1987.
Decided April 10, 1987.
 
 Matthew Muraskin, Hempstead, N.Y. (Morton J. Marshack, Sharon E. Kivowitz, Legal Aid Society of Nassau County, Hempstead, N.Y., on brief), for plaintiffs-appellants.
 James M. Catterson, Jr., Port Jefferson, N.Y. (William H. Pauley III, Steven A. Soloway, Snitow & Pauley, New York City, on brief), for defendants-appellees.
 Before OAKES, KEARSE and CARDAMONE, Circuit Judges.
 PER CURIAM:
 
 
 1
 Plaintiffs Herbert Badgley and other inmates of the Nassau County Correctional Center ("NCCC"), on behalf of a class of all present and future inmates of the NCCC, appeal from an order dated February 26, 1987 ("February 26 Order") entered in the United States District Court for the Eastern District of New York, Jacob Mishler, Judge, allowing the County of Nassau, its sheriff, and the warden of the NCCC (collectively the "County") to increase the maximum in-house population of the core facility at the NCCC from 710 to 740, pending determination of a motion by the County to modify the parties' amended consent decree dated October 9, 1984, so as to increase NCCC's prisoner population cap from 710 to 750. Plaintiffs contend that the district court abused its discretion in increasing the population cap pending determination of the motion because there have been no new or unforeseen circumstances warranting such a modification, and because the modification would defeat the primary objective of the consent decree, i.e., to reduce overcrowding in the NCCC. In light of the prior decisions of this Court in Badgley v. Varelas, 729 F.2d 894 (2d Cir.1984) ("Badgley I "), and Badgley v. Santacroce, 800 F.2d 33 (2d Cir.1986) ("Badgley II "), cert. denied, --- U.S. ----, 107 S.Ct. 955, 93 L.Ed.2d 1003 (1987), familiarity with which is assumed, we vacate the order because the district court failed to set forth findings of fact and conclusions of law sufficient to permit appellate review of the propriety of the February 26 Order in the context of those decisions.
 
 
 2
 Fed.R.Civ.P. 52(a) provides, in pertinent part, that "in granting or refusing interlocutory injunctions the court shall ... set forth the findings of fact and conclusions of law which constitute the grounds of its action." A principal purpose of this requirement is to permit the appellate court to review the decision. Mayo v. Lakeland Highlands Canning Co., 309 U.S. 310, 316, 60 S.Ct. 517, 520, 84 L.Ed. 774 (1940) ("It is of the highest importance to a proper review of the action of a court in granting or refusing a preliminary injunction that there should be fair compliance with Rule 52(a) of the Rules of Civil Procedure.") (footnote omitted); see Fed.R.Civ.P. 52(a) advisory committee note. Although the appellate court may proceed with its review despite the lower court's inadequate findings if the appellate court " 'can discern enough solid facts from the record to enable it to render a decision,' " Canadian Transport Co. v. Irving Trust Co., 548 F.2d 53, 55 (2d Cir.1977) (per curiam) (quoting English v. Town of Huntington, 448 F.2d 319, 321 (2d Cir.1971)), the reviewing court may vacate the order if the findings and the record are not sufficient to enable the court to be sure of the basis of the decision below, see, e.g., Fuchstadt v. United States, 434 F.2d 367, 369-70 (2d Cir.1970) (remanding for findings as to plaintiff's damages in negligence action); 9 C. Wright & A. Miller, Federal Practice and Procedure Sec. 2577, at 697 (1971), and cases cited therein.
 
 
 3
 In the present case, in ordering that the population cap at the NCCC be temporarily increased pending a decision on the motion to modify the consent decree, the district court's only finding was as follows:
 
 
 4
 The inmate population at the NCCC is subject to change hourly. Sudden substantial increases and decreases are not uncommon. NCCC is in constant danger of violating the cap of 710 inmates at the core facility resulting in penalties fixed by the Second Circuit Court of Appeals in its opinion of August 25, 1986. See Badgley [II], 800 F.2d [at] 39....
 
 
 5
 February 26 Order at 3. It is clear from Badgley II, cited by the district court, that this finding is not a sufficient basis for relieving defendants of their obligation to comply with the consent decree. The purpose of the decree is to remedy certain conditions at the NCCC, all of which resulted from overcrowding. In Badgley II, 800 F.2d at 37, we ruled that a defense of factual impossibility was not available to relieve defendants of their obligation to comply with the population cap provision of the consent decree. A fortiori, the present finding of a "constant danger of violating the cap" provision plainly cannot justify an increase of the NCCC population cap.
 
 
 6
 Nor has the district court made any other findings, formal or informal, that permit adequate review of the February 26 Order in light of the prior decisions of this Court in this litigation. In our seminal decision in Badgley I, for example, we declined to impose specific remedies other than the population cap because the district court was directed "to deal forcefully with enforcement of the population limit." 729 F.2d at 902. Our premise was that other violations of the consent judgment, all of which resulted from overcrowding, might well disappear simply as a consequence of the decrease of the NCCC population to the maximum allowed by the consent decree. See id. at 902-03. We see no indication that in entering its February 26 Order allowing the temporary increase in NCCC's population cap the district court found that such an order would not impede this goal. Nor did the court make any findings as to facts that would seem pertinent to such a determination, or as to other relevant matters, such as whether the increase in population in the NCCC core facility would require increases in ancillary services or facilities and whether such ancillary services or facilities are available.
 
 
 7
 In the absence of appropriate findings by the district court, the February 26 Order is vacated, and the matter is remanded to the district court for further proceedings not inconsistent with this opinion.