# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued November 16, 2010         Decided February 18, 2011

No. 10-5227

ROBERT GORDON,
APPELLANT

v.

ERIC H. HOLDER, JR., IN HIS OFFICIAL CAPACITY AS ATTORNEY
GENERAL OF THE UNITED STATES, ET AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:10-cv-01092)

*Aaron M. Streett* argued the cause for appellant. With him
on the briefs were *R. Stan Mortenson*, *Sara E. Kropf*, and
*Richard P. Sobiecki*.

*Michael P. Abate*, Attorney, U.S. Department of Justice,
argued the cause for appellees. With him on the brief were
*Ronald C. Machen Jr.*, U.S. Attorney, and *Mark B. Stern* and
*Alisa B. Klein*, Attorneys. *R. Craig Lawrence*, Assistant U.S.
Attorney, entered an appearance.

*Lawrence G. Wasden*, Attorney General, Office of the
Attorney General for the State of Idaho, and *Brett T. DeLange*,

Deputy Attorney General, were on the brief for *amicus curiae* State of Idaho.

*John F. O'Connor* and *Scott A. Sinder* were on the brief for *amici curiae* National Association of Convenience Stores and New York Association of Convenience Stores in support of appellees.

*Allison M. Zieve* and *Adina H. Rosenbaum* were on the brief for *amici curiae* American Cancer Society, et al. in support of appellees.

*Linda Singer* was on the brief for *amicus curiae* City of New York in support of appellees.

Before: ROGERS, BROWN and GRIFFITH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* BROWN.

I

BROWN, *Circuit Judge*: On March 31, 2010, the President signed into law the Prevent All Cigarette Trafficking Act ("PACT Act"), Pub. L. No. 111-154, 124 Stat. 1087 (2010). The Act, which significantly amended its predecessor, the Jenkins Act, was aimed primarily at combating three evils: tobacco sales to minors, cigarette trafficking, and circumvention of state taxation requirements. Pub. L. No. 111-154, § 1(b), *reprinted in* 15 U.S.C. § 375 note (findings 1–10). The means Congress selected to achieve these ends are the subject of the litigation in this case. Congress reasoned that by requiring delivery sellers to ensure all applicable taxes are pre-paid, it could prevent purchasers from skirting state taxation through online purchases. 15 U.S.C. § 376a(a)(3)(D),

(d)(1). And to prevent both sales to minors and cigarette trafficking, Congress decided to ban all shipments of cigarettes via the U.S. mails. 18 U.S.C. § 1716E(a).

Plaintiff-Appellant Robert Gordon is a Seneca Indian and a delivery seller of tobacco products. As a delivery seller, Gordon distributes his products by mail, rather than through a brick-and-mortar retail store. *See* 15 U.S.C. § 375(5)–(6). Prior to the PACT Act, ninety-five percent of Gordon's business came from the sale of tobacco by internet and phone. But since the Act's passage, Gordon claims he has lost almost all of his business due to the remedial measures Congress enacted.

On June 28, 2010—the day before the PACT Act was to go into effect—Gordon filed suit in the district court challenging the Act's constitutionality under both the Due Process and Equal Protection Clauses. In conjunction with his complaint, Gordon sought a temporary restraining order and a preliminary injunction. The district court denied Gordon's motion, basing its decision on the "lateness of the hour in which plaintiff [sought] this relief," and the court's conclusion that it was not in the public's interest to "stop in its tracks a legislative enactment of . . . Congress." Dist. Ct. Docket No. 6, at 1, 2. Gordon appeals, arguing that unless this court enjoins enforcement of the mailing ban and the taxation provision, his business will suffer irreparable harm.

II

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def.*

*Council*, 129 S. Ct. 365, 374 (2008). In considering whether the "extraordinary remedy" of a preliminary injunction is warranted, *id.* at 376, a district court must set forth its consideration of the factors and its attendant conclusions of law, Fed. R. Civ. P. 52(a); *see also Mayo v. Lakeland Highlands Canning Co.*, 309 U.S. 310, 316 (1940) ("It is of the highest importance to a proper review of the action of a court in granting or refusing a preliminary injunction that there should be fair compliance with Rule 52(a) . . . ."). If a district court fails to explicate its analysis of the injunction factors, a reviewing court will be unable to determine "whether the district court properly carried out" its charge to weigh the factors with one another. *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 305 (D.C. Cir. 2006).

In examining the district court's decision, our review of the district court's denial of a preliminary injunction is for abuse of discretion, but our review of legal issues is *de novo*. *Davis v. Pension Benefit Guaranty Corp.*, 571 F.3d 1288, 1291 (D.C. Cir. 2009). Applying this standard, we conclude the district court abused its discretion.

First, the district court erred by relying on the late hour of the filing. At the time of Gordon's filing, the statute had yet to go into effect. A motion seeking to enjoin a statute's enforcement before the statute may legally be enforced is timely—or at least not late—by definition. Of course, in some cases, pre-enforcement challenges may present ripeness concerns, *see, e.g.*, *Unity08 v. Fed. Election Comm'n*, 596 F.3d 861, 865 (D.C. Cir. 2010) (clarifying that pre-enforcement challenges to the Commission's legal position fall under the rubric of the ripeness doctrine); *Sabre, Inc. v. Dep't of Transp.*, 429 F.3d 1113, 1119–21 (D.C. Cir. 2005) (examining a pre-enforcement challenge to an agency's regulatory authority

under the ripeness doctrine), but we have yet to find a case where they present tardiness concerns.

Moreover, even if the filing was untimely (which it was not), a delay in filing is not a proper basis for denial of a preliminary injunction. Although federal courts have at times bolstered their denials of preliminary injunctions by referring to the late hour of a filing, those cases in no way stand for the proposition that a late filing, on its own, is a permissible basis for denying a preliminary injunction. *See, e.g.*, *McDermott ex rel. NLRB v. Ampersand Pub., LLC*, 593 F.3d 950, 965 (9th Cir. 2010) ("Delay by itself is not a determinative factor in whether the grant of interim relief is just and proper." (alteration and internal quotation marks omitted)); *Fund for Animals v. Frizzell*, 530 F.2d 982, 987 (D.C. Cir. 1975) (reviewing the district court's analysis of the four factors, and finding the court's ultimate conclusion "bolstered" by the plaintiff's delay). Rather, they demonstrate only that untimely filings may support a conclusion that the plaintiff cannot satisfy the irreparable harm prong. *See, e.g.*, *McDermott*, 593 F.3d at 965 ("The factor of delay is only significant if the harm has occurred and the parties cannot be returned to the status quo . . . ." (internal quotation marks omitted)); *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1211 (10th Cir. 2009) ("[D]elay is but one factor in the irreparable harm analysis."); *Quince Orchard Valley Citizens Ass'n, Inc. v. Hodel*, 872 F.2d 75, 80 (4th Cir. 1989) (explaining that delay is relevant in considering one's entitlement to injunctive relief because delay indicates a lack of irreparable harm). But because the district court did not consider in the first instance whether Gordon would suffer irreparable harm, any reliance on the timeliness of the filing would have been improper even if the filing were untimely.

Second, the district court erred by failing to consider meaningfully the preliminary injunction factors. Our decision in *Chaplaincy of Full Gospel Churches v. England* explained that because an appellate court reviews *de novo* the legal findings underlying an injunction determination, the absence of legal findings does not necessarily preclude appellate review. 454 F.3d at 305. Nonetheless, we explained that "without any conclusions of law as to the . . . remaining factors, [a reviewing court is] unable to determine whether the district court properly [exercised its discretion]." *Id.* This is precisely the situation presented by this case. Even were we to conduct a *de novo* review of the legal findings, we are unable to proceed because we do not have before us the district court's weighing of the injunctive factors—in fact, we do not have before us any indication the district court attempted to perform its discretionary function. Therefore, we must remand to allow the district court the opportunity to weigh the factors in determining whether a preliminary injunction is warranted.

Third, the district court erred by addressing in conclusory fashion the fourth factor—the public's interest. By summarily citing to the public's interest without elaboration, the district court abdicated its responsibility to fully analyze the one factor on which it did rely. Consequently, we cannot be sure the district court's analysis of the public interest was complete. *See Winter*, 129 S. Ct. at 378 ("Despite the importance of assessing the balance of equities and the public interest in determining whether to grant a preliminary injunction, the District Court addressed these considerations in only a cursory fashion."); *see also Kickapoo Tribe of Indians of the Kickapoo Reservation in Kan. v. Babbitt*, 43 F.3d 1491, 1497 (D.C. Cir. 1995) (explaining that in reviewing for abuse of discretion, the appellate court should "consider whether the decision maker

failed to consider a relevant factor" (internal quotation marks omitted)).

Consequently, we must remand the case so the district court can address each of the factors. We make three further observations. First, the district court will need to separate its analysis of Gordon's likelihood of success on each of his constitutional claims. The government's suggestion that there can be no Due Process violation when Congress authorizes state levies based on minimum contacts collapses the Due Process and Commerce Clause aspects of Gordon's claims. As the Supreme Court has explained, the inquiries are analytically distinct and should not be treated as if they were synonymous. *Quill Corp. v. North Dakota*, 504 U.S. 298, 305 (1992) ("[W]hile Congress has plenary power to regulate commerce among the States and thus may authorize state actions that burden interstate commerce, it does not similarly have the power to authorize violations of the Due Process Clause." (citation omitted)) .

Even national legislation—which can permissibly sanction burdens on interstate commerce—cannot violate the Due Process principles of "fair play and substantial justice." *Quill*, 504 U.S. at 307 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Although *Quill* did not deal with excise taxes, there remains an open question whether a national authorization of disparate state levies on e-commerce renders concerns about presence and burden obsolete; *Quill*'s analytical approach is instructive.

Second, there is a potential standing issue with respect to Gordon's Tenth Amendment claim. *Lomont v. O'Neill*, 285 F.3d 9, 13 n.3 (D.C. Cir. 2002). Because standing is a prerequisite to jurisdiction, *Fla. Audubon Soc'y v. Bentsen*, 94

F.3d 658, 661 (D.C. Cir. 1996), the district court will need to resolve the question.

Third, to the extent Gordon's Due Process argument turns on his minimum contacts with the states, the rules governing minimum contacts may need to be addressed. *See Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 512 (D.C. Cir. 2002).

Because we are remanding for appropriate consideration of the factors, we deem it prudent not to address these issues in the abstract.

## III

The case is remanded for further proceedings consistent with this opinion.

*So ordered.*